Robert Earl BLACKWELL *v.* STATE of Arkansas

CR 98-456                                    1 S.W.3d 399

Supreme Court of Arkansas
Opinion delivered October 7, 1999

*Kearney Law Firm*, by: *Jack R. Kearney*, for appellant.

*Mark Pryor*, Att'y Gen., by: *David R. Raupp*, Ass't Att'y Gen., for appellee.

TOM GLAZE, Justice. Appellant Dr. Robert Earl Blackwell, a Pine Bluff dentist, brings this appeal from a Pulaski County Circuit Court jury conviction. Blackwell was

found guilty of violating the Arkansas Medicaid Fraud Act, Ark. Code Ann. §§ 5-55-101, et seq. (Repl. 1997). Blackwell was sentenced to 60 months' imprisonment, ordered to pay a fine of $66,246.60, and directed to make restitution in the amount of $21,082.20. We have jurisdiction of this case under Ark. Sup. Ct. R. 1-2(b)(1) and (6) (1999), because it involves issues of first impression and the interpretation of the State's Medicaid Fraud Act. Blackwell does not question the sufficiency of the evidence from which the jury found him guilty. Instead, Blackwell raises three points for reversal, wherein he claims that (1) his right to speedy trial was violated, (2) he was tried in the wrong county and jurisdiction, and (3) his Fourth Amendment rights were violated by the State's search and seizure of his business.

In his speedy-trial argument, Blackwell submits that he was entitled to have his charge dismissed under Ark. R. Crim. P. 28.1 and 28.2, since he was not brought to trial within twelve months (365 days) from when he was charged. In his situation, 785 days had elapsed between when he was charged and brought to trial. Thus, under Rules 28.1 and 28.2, Blackwell's date of trial commenced 420 days after when trial should have begun, unless his trial date had been correctly extended for periods of necessary delay established or authorized in Rule 28.3. He concedes that 220 of the 420 days were chargeable to him and excludable under the provisions of Rule 28.3.[1] Even so, he argues, the State was still 200 days late in bringing him to trial, and the State failed to meet its burden to demonstrate that those 200 days were excludable under Rule 28.3. *See Morgan v. State*, 333 Ark. 294, 299, 971 S.W.2d 219, 221 (1998). Blackwell is mistaken.

The State submits that, while Blackwell claims that the State was 200 days late in commencing his trial, Blackwell fails to recognize 221 days' delay that are attributable to Blackwell. Those 221 days bring his trial well within the speedy-trial period required under Rule 28.

---

[1] Blackwell agreed the following periods (220 days) were chargeable to him: (a) thirty-eight days for failing to appear at an omnibus hearing, (b) eighteen days arguing over his indigency status, and (c) 164 days resulting from a continuance he requested.

■ First, Blackwell was given a mental evaluation, and it took 95 days to obtain the report. While on appeal Blackwell claims this 95-day period was not excludable and should be attributed to the State, he took the opposite position at trial. When the subject was addressed at trial, defense counsel said, "With respect to the Act III evaluation, your honor, that is excludable as a matter of law. That is the 95 days and that is excludable under state law." Having conceded the exclusion of the 95-day period at trial, Blackwell may not complain of its exclusion on appeal. *See Jones v. State*, 329 Ark. 603, 951 S.W.2d 308 (1997).

Second, Blackwell claims a 126-day period he believes is attributable to the State and is not excludable under Rule 28.3. Again, we disagree. Blackwell exhibited some difficulty in working with counsel; he had three attorneys, two of whom withdrew with the court's permission. At one stage, trial had been set for October 29, 1996, and an omnibus hearing was held on October 7, 1996, so the parties could ready themselves for trial. Instead, Blackwell announced at the hearing that his second counsel had betrayed him, he was afraid of her, he believed she had failed to do any of the things a prudent attorney would have done, and he could not work with her. There was considerable colloquy between the trial court, Blackwell, his attorney, and the State regarding who would or could represent Blackwell. The trial court and counsel discussed the complexities of the case and how difficult it would be for new counsel to be prepared for the scheduled October 29, 1996 trial. As a result, the trial court appointed the public defender's office to represent Blackwell and reset the trial date to February 10, 1997. The trial court announced it was charging the 126-day delay to Blackwell because of the problems he had with his counsel. The trial court was correct.

■ ■ Rule 28.3(h) generally provides that periods of delay for good cause are excluded in computing the time for defendant's speedy trial. This court has held that when a delay results from the need for the appointment of new counsel, such appointment is excludable for good cause. *See Lynch v. State*, 315 Ark. 47, 863 S.W.2d 838 (1993); *Glover v. State*, 307 Ark. 1, 817 S.W.2d 409 (1991). Here, because appointment of new counsel was required as a result of Blackwell's inability to work with his

(second) counsel and because the State's case involved a "massive" amount of documents, the trial court's action in ordering a continuance to permit new counsel additional time to prepare for trial was a delay for good cause attributable against Blackwell under Rule 28.3(h).

We next turn to Blackwell's second issue, wherein he contends he was deprived of his right to trial in Jefferson County where he asserts the crime occurred. Blackwell relies on Ark. Code Ann. § 16-88-105(b) (1987), which in relevant part provides, "[T]he local jurisdiction of circuit courts shall be of offenses committed within the respective counties in which they are held." He further cites Ark. Const. art. 2, § 10, which reads that an accused is entitled to trial by an impartial jury located in the county in which the crime was committed. Blackwell argues that all of the acts the State claims were illegal occurred in Pine Bluff, where Blackwell's dental practice is located, patients resided, and billings originated. Blackwell further submits that, while his Medicaid billings were submitted to the state agency in Little Rock for payments, such acts provided an insufficient nexus to bring charges against him in the Pulaski County Circuit Court.

Blackwell's argument is inconsistent with Ark. Code Ann. § 16-88-108(c) (1987). That provision reads as follows:

> Where the offense is committed partly in one county and partly in another, or the acts, or effects thereof, requisite to the consummation of the offense occur in two or more counties, the jurisdiction is in either county.

See also *Barr v. State*, 336 Ark. 220, 984 S.W.2d 792 (1999).

■ A person commits Medicaid fraud under Arkansas's Act when he "purposely makes or causes to be made a false statement or representation of a material fact in any application for any benefit or payment under the Arkansas Medicaid Program." Ark. Code Ann. § 5-55-111(1) (Repl. 1997). Here, the State charged Blackwell in Pulaski County with violating § 5-5-111(1), by alleging he unlawfully, feloniously, and purposely made or caused false statements or representations when applying for benefits or payments under the Arkansas Medicaid Program. While Blackwell's dental practice was located in Pine Bluff and he treated patients

there, his offense was consummated by submitting fraudulent billings to Arkansas's State Medicaid Agency (Department of Human Services) located in Little Rock. Moreover, it was in Little Rock where the state agency denied or authorized Blackwell's Medicaid claims. Clearly, Blackwell's acts took effect in Pulaski County where the Medicaid agency received and processed Blackwell's fraudulent bills. For these reasons, we affirm the trial court's ruling that it had jurisdiction to try the State's Medicaid charges against Blackwell.

■ In his final argument, Blackwell asserts that the State's search and seizure of documentary evidence conducted at his place of business violated his constitutional rights under the Fourth Amendment. He first argues the judge issuing the warrant to search Blackwell's office had no probable cause to do so. The trial court rejected Blackwell's contention, but it also ruled that Blackwell knowingly and voluntarily gave consent to perform the search and probable cause was unnecessary. Because the record reflects Blackwell gave his written consent, we affirm the trial court's ruling upholding the State's search.

Section 5-55-104, in covering the subject of Medicaid fraud, requires participants of the Medicaid program to provide the following:

> (a) No potential Medicaid recipient shall be eligible for medical assistance unless he has, in writing, authorized the Director of the Department of Human Services to examine all records of his own, or of those receiving or having received Medicaid benefits through him, whether the receipt of such benefits would be allowed by the Arkansas Medicaid Program or not, for the purpose of investigating whether any person may have committed the crime of Medicaid fraud, or for use or potential use in any legal, administrative, or judicial proceeding.

> (b) No person shall be eligible to receive any payment from the Arkansas Medicaid Program or its fiscal agents unless that person has, in writing, authorized the Director of the Department of Human Services to examine all records for the purpose of investigating whether any person may have committed the crime of Medicaid fraud, or for use or for potential use in any legal, administrative, or judicial proceeding.

(c) The Attorney General and the prosecuting attorneys shall be allowed access to all records of persons and Medicaid recipients under the Arkansas Medicaid Program to which the Director of the Department of Human Services has access for the purpose of investigating whether any person may have committed the crime of Medicaid fraud, or for use or potential use in any legal, administrative, or judicial proceeding.

* * *

(f) All persons under the Arkansas Medicaid Program are required to maintain at their or its principal place of business all records at least for a period of five (5) years from the date of claimed provision of any goods or services to any Medicaid recipient.

As is readily made clear by the forgoing Arkansas statutes, Blackwell's right to participate in the State's Medicaid Program depended upon his agreement to provide his business records to the State upon request. In keeping with state law, Blackwell executed a contract with the State that he would keep all records as provided by the State's provider manual, and he agreed to disclose the extent of services provided to individuals (patients) receiving assistance under the Medicaid program. In addition, Blackwell further agreed to make all of his records available in order to satisfy audit requirements under the program. In fact, Blackwell testified that he had signed the contract with the State agreeing to make his records available to the Department of Human Services or the Medicaid fraud units upon request, and at the time of signing, it did not seem unreasonable.[2]

██ Although we have no prior case construing § 5-55-104's provisions, the Eighth Circuit Court of Appeals has construed and upheld the Arkansas statute in the context of a search and seizure similar to the case now before us. *United States v. Brown*, 763 F.2d 984 (8th Cir. 1985).[3] In *Brown*, the court dealt with a pharmacist, Paul S. Brown, and his corporation that pro-

---

[2] He later testified that, upon reflection, he did not think he agreed to let police come to his door and to enter for a search.

[3] The Eighth Circuit construed § 5-55-104's predecessor, Ark. Stat. Ann. § 41-4410 (Cum. Supp. 1983), but the relevant provisions read the same.

vided services under the Arkansas Medicaid Program. Brown's corporation agreed to maintain its business records of all prescriptions dispensed to Medicaid recipients, and it also agreed to make its records available to the State or the State's designated agents. The State later sent the Attorney General's personnel to Brown's pharmacy to review the corporation's records as a part of an ongoing criminal investigation, and the information gained from the review was subsequently given to the FBI. The federal government indicted Brown and his corporation, and they later filed a motion to suppress, asserting the documentary evidence obtained in the search of the corporation violated his Fourth Amendment right to be free from warrantless searches. Citing *United States v. Griffin*, 555 F.2d 1323 (5th Cir. 1977), the Eighth Circuit upheld the district court's ruling denying Brown's and his corporation's motion to suppress, stating the following:

> The situation in *Griffin* is virtually identical to the circumstances presented in this case and we agree with the reasoning of the Fifth Circuit. The government has a substantial interest in establishing methods by which it can effectively monitor compliance with the regulations governing the Medicaid Program and root out opportunities and instances of fraud. We see no constitutional infirmity in the government requiring a provider to agree to maintain records of Medicaid transactions and to permit periodic audits of those records as a condition for participation in the Medicaid Program. In this case, the appellants were aware of this condition, and voluntarily entered into a contract with [the State] in which they authorized such audits in exchange for obtaining the benefits attendant to participation in the Medicaid Program. Accordingly, we hold that the appellants explicitly consented to reasonable warrantless inspections of the pharmacy records by entering into the contract with [the State].

■ ■ The law is well settled that a warrantless search is valid if conducted pursuant to the knowing and voluntary consent of the person subject to a search. *See Schneckloth v. Bustamonte*, 412 U.S. 218 (1973). Here, Arkansas's statutes and regulations contemplate that audits may be conducted pursuant to a criminal investigation, and Blackwell was aware that such audits were possible. Yet, he still signed an agreement to participate in Arkansas's Medicaid Program. Because Blackwell consented to the State's

entering his office to audit his records, we hold the trial court was correct in denying his motion to suppress.

For the reasons above, we affirm.