STATE of Arkansas *v.* Dean Marion OSBORN

CR 01-21                                    45 S.W.3d 373

Supreme Court of Arkansas
Opinion delivered June 7, 2001

*Mark Pryor*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellant.

*Ernie Witt*, for appellee.

DONALD L. CORBIN, Justice. The State of Arkansas appeals the order of the Franklin County Circuit Court dismissing the charge of hindering apprehension or prosecution against Appellee Dean Marion Osborn. The State argues that the trial court erred in finding that Franklin County lacked jurisdiction

over Osborn's charge. The State asserts that under Ark. Code Ann. § 16-88-108(c) (1987), jurisdiction was proper in either Crawford County, where the act was committed, or Franklin County, where the effects of the offense were felt. This court has not heretofore interpreted the "effects" clause of section 16-88-108(c) as it applies to the charge of hindering apprehension or prosecution. We thus have jurisdiction of the State's appeal, as our holding will establish important precedent and is necessary for the correct and uniform administration of justice. *See* Ark. R. App. P.—Crim. 3(c); *State v. Earl*, 333 Ark. 489, 970 S.W.2d 789, *cert. denied*, 525 U.S. 971 (1998); *State v. Rice*, 329 Ark. 219, 947 S.W.2d 3 (1997). For the reasons set out below, we conclude that the State's argument has merit, and we reverse.

The facts of this case are not in dispute. Don Meador was shot to death in his home in Franklin County on or about January 14, 1998. On February 5, 1998, Investigator Richard Hoffman, of the Arkansas State Police, interviewed Osborn about the homicide at his home in Crawford County. Osborn told Hoffman that he had not seen the victim for a year and a half, and that he was at home in Van Buren on the date in question. About nine months later, in November 1998, Osborn contacted the victim's son, Steve Meador, and told him that he had information about his father's murder. Osborn later met with Steve and told him that he had been present in Meador's home when three individuals, Jeremy Richison, Marshall White, and Gary Harvel, came to the house and attacked Meador at the door leading into the garage. Osborn stated that he fled the house through the back door, but then stopped and watched through the kitchen window, as a struggle ensued between Meador and the three assailants. Osborn then heard five shots and ran toward the front of the house, where he heard one of the assailants call out "Jeremy, let's go!" Osborn stated that one of the assailants had a small-caliber revolver.

Steve Meador reported Osborn's story to the police, who, in turn, arrested Osborn for hindering apprehension or prosecution, pursuant to Ark. Code Ann. § 5-54-105 (Repl. 1997). The charge was based on the State's theory that Osborn had provided false information to the police in his February interview. Osborn was charged in Franklin County, where the murder occurred and where the investigation was ongoing. Osborn subsequently challenged Franklin County's authority to charge and try him. He contended that the proper venue for the charge was Crawford County, where he gave the interview. The State countered that Franklin County

had jurisdiction because the effects of his actions were felt there. The State relied on section 16-88-108(c).

The trial court agreed with Osborn and dismissed the charge. Viewing the issue as one of venue, rather than jurisdiction, the trial court found that venue was in Crawford County. It is evident from the trial court's bench ruling and the subsequent written order that the trial court focused almost entirely on the situs of Osborn's allegedly unlawful acts, with little regard for where the effects of his acts occurred. Moreover, the order of dismissal evinces the trial court's conclusion that Crawford County was the only county in which Osborn could be charged and tried. In other words, the trial court did not interpret section 16-88-108(c) as providing concurrent jurisdiction over Osborn's offense. We conclude that the trial court's interpretation of the law was erroneous.

██ ██ Before reaching the merits of this appeal, however, we first address the State's contention that this issue is one of jurisdiction, not venue. The terms "venue" and "jurisdiction" are often used interchangeably. *See Meny v. Norris*, 340 Ark. 418, 13 S.W.3d 143 (2000) (*per curiam*); *Davis v. Reed*, 316 Ark. 575, 873 S.W.2d 524 (1994). Ordinarily, venue refers to the geographic area, like a county, where an action is brought to trial. In contrast, jurisdiction is generally thought of as the power of a court to decide cases, and it presupposes control over the subject matter and the parties. *Id.* One type of jurisdiction is known as local jurisdiction. According to Professor LaFave, local jurisdiction "deals only with where the offense is to be tried, not with whether the state lacks the basic authority to apply its criminal law to the events in question." Wayne R. LaFave, *Criminal Procedure* § 16.1(a), at 461 (2d ed. 1999). In Arkansas, local jurisdiction is statutorily provided for in Ark. Code Ann. § 16-88-105 (1987). Subsection (b) of that statute provides that the local jurisdiction of circuit courts "shall be of offenses committed within the respective counties in which they are held." Section 16-88-108(c) provides for local jurisdiction over those offenses that occur in more than one county. In this respect, section 16-88-108(c) is an extension of the local jurisdiction provided for in section 16-88-105. We thus agree with the State that this appeal is properly viewed as presenting an issue of local jurisdiction, not venue. That being said, we turn now to the substance of the State's appeal.

██ The State contends that the trial court erred in its interpretation of section 16-88-108(c), which provides: "Where the offense is committed partly in one county and partly in another, or the acts,

*or effects thereof,* requisite to the consummation of the offense occur in two (2) or more counties, the jurisdiction is in *either* county." (Emphasis added.) This statute is remedial in nature, intended to prevent miscarriages of justice by extending the lines of jurisdiction beyond the limits prescribed by the common law, and is to be liberally construed. *Hill v. State,* 253 Ark. 512, 487 S.W.2d 624 (1972). It is presumed that an offense charged was committed within the jurisdiction of the court where the charge was filed, unless the evidence affirmatively shows otherwise. *Id. See also* Ark. Code Ann. § 16-88-104 (1987). The State argues that all of the evidence in this case supports jurisdiction in either Crawford County, where Osborn acted, or Franklin County, where the effects of Osborn's actions manifested themselves and hindered the murder investigation.

The State relies on this court's holdings in *Hill* and *Blackwell v. State,* 338 Ark. 671, 1 S.W.3d 399 (1999). In *Blackwell,* this court held that jurisdiction over a charge of Medicaid fraud was proper in Pulaski County, where the effects of the defendant's acts were felt. Blackwell argued that there was an insufficient nexus to bring charges against him in Pulaski County. This court disagreed:

> While Blackwell's dental practice was located in Pine Bluff and he treated patients there, his offense was *consummated* by submitting fraudulent billings to Arkansas's State Medicaid Agency (Department of Human Services) located in Little Rock. Moreover, it was in Little Rock where the state agency denied or authorized Blackwell's Medicaid claims. *Clearly, Blackwell's acts took effect in Pulaski County* where the Medicaid agency received and processed Blackwell's fraudulent bills. For these reasons, we affirm the trial court's ruling that it had jurisdiction to try the State's Medicaid charges against Blackwell.

*Id.* at 675-76, 1 S.W.3d at 401 (emphasis added).

Similarly, in *Hill,* 253 Ark. 512, 487 S.W.2d 624, the appellant was convicted in Howard County of selling cattle that were subject to a lien. The evidence showed that all negotiations for the sale of the cattle took place in Sevier County, that both the appellant and the buyer were residents of Sevier County, and that the buyer delivered the check for payment of the purchase price in Sevier County. The only connection between Howard County and the transaction was the fact that the cattle were located on a farm in that county. This court concluded, however, that it was not error to charge the appellant in Howard County:

In this case, the *acts* of Hill with reference to the sale may well have taken place in Sevier County, *but the intention essential to his conviction* must have been to defeat the holder of the "lien" in the collection of the debt. If the cattle were in Howard County, the "lien" was there and its enforcement could be expected to be conducted or at least initiated in that county. The *effect* of the sale was to transfer title to the cattle located in Howard County to Powell, who would certainly take them into his possession there. *Clearly, acts or their effects requisite to the consummation of the alleged offense would occur in Howard County.* The venue was not improperly laid there, even though it might have been properly laid in Sevier County.

*Id.* at 527–28, 487 S.W.2d at 634 (footnote omitted)· (emphasis added). In reaching this conclusion, this court relied on several cases from foreign jurisdictions and held:

If the acts committed by the accused *were intended to take effect in a county other than that in which all were actually committed*, venue may be laid in the former county, even though all of the acts of the accused were done before the actual effect of the unlawful purpose has materialized there.

*Id.* at 524, 487 S.W.2d at 632 (emphasis added) (citing *People v. Wallace*, 78 Cal. App. 2d 726, 178 P.2d 771 (1947); *People v. Quill*, 149 N.Y.S.2d 566 (Kings County Ct. 1956); *People v. Vario*, 2 N.Y.S.2d 611 (Queens County Ct. 1938)).

Two of the cases relied upon by this court in *Hill*, *Wallace*, 78 Cal. App. 2d 726, 178 P.2d 771; and *Quill*, 149 N.Y.S.2d 566, rely on language from the case of *People v. Megladdery*, 40 Cal. App. 2d 748, 106 P.2d 84 (1940). In *Megladdery*, the California court was presented with a question of local jurisdiction over charges stemming from the bribery of a public official. The defendant argued that because the acts that formed the basis of his criminal charges were committed outside of Alameda County, that county had no jurisdiction to try him. The applicable California statute, section 781 of the California Penal Code, is very similar to section 16-88-108(c). Section 781 provided: "When a public offense is committed in part in one county and in part in another, or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more counties, the jurisdiction is in either county." *Id.* at 774, 106 P.2d at 98. The defendant argued that under section 781, a particular county cannot have jurisdiction over an offense

unless some act that is a necessary element of the offense is committed in that county, or unless some effect of such an act, which effect is an essential or necessary element of such offense, occurs within the county. The appellate court disagreed:

> The interpretation contended by respondent would completely disregard the phrase "or the acts or effects thereof constituting or requisite to the consummation of the offense" contained in the section. Obviously, the phrase, "or requisite to the consummation of the offense," means requisite to the completion of the offense — to the achievement of the unlawful purpose — to the ends of the unlawful enterprise. By the use of the word "consummation" the legislature drew a distinction between an act or an effect thereof which is essential to the commission of an offense, and an act or effect thereof which, although unessential to the commission of the offense, is requisite to the completion of the offense — that is, to the achievement of the unlawful purpose of the person committing the offense.

*Id.* at 774-75, 106 P.2d at 98. We believe that this reasoning is applicable to the present case.

■ Here, Osborn is charged with hindering apprehension or prosecution, in violation of section 5-54-105. Although this offense may be violated in a number of ways, Osborn was charged pursuant to subsection (a)(6), which prohibits a person from volunteering false information to a law enforcement officer while acting "with purpose to hinder the apprehension, prosecution, conviction, or punishment of another for an offense[.]" The unlawful act is volunteering false information to the police. There is no dispute that the act alleged to have been committed by Osborn was committed entirely within the boundaries of Crawford County, where Osborn gave the interview. However, the effects requisite to the consummation of the offense, *i.e.*, the achievement of the unlawful purpose of hindering the apprehension or prosecution of the three murder suspects, occurred in Franklin County, where the murder occurred and the investigation was ongoing. Indeed, were it not for the murder in Franklin County, Osborn would not have been interviewed by police and there would have been no investigation or prosecution for him to hinder. Thus, under section 16-88-108(c), jurisdiction was proper in either county. Accordingly, the trial court erred in dismissing the charge against Osborn in Franklin County.

■ We thus reverse the trial court's order and remand with instructions to reinstate the charge of hindering apprehension or prosecution against Osborn. We agree with the State that no double-jeopardy violation will result from reinstating the charge against Osborn. This court recently stated in *State v. Havens*, 337 Ark. 161, 987 S.W.2d 686 (1999), that where the charge is dismissed on a pretrial motion made by the defendant's counsel and is not the result of the State's failure to prove its case, the State should be permitted to refile the charge. "Permitting retrial in this instance is not the sort of oppression at which the Double Jeopardy Clause is directed[.]" *Id.* at 168, 987 S.W.2d at 690 (citing *State v. Zawodniak*, 329 Ark. 179, 946 S.W.2d 936 (1997), *cert. denied*, 522 U.S. 1125 (1998)).

Reversed and remanded.