Mr. Barney Reeves, Director Alcohol Beverage Control Enforcement Department of Finance and Administration 1515 W. 7th Street, Suit 305 P.O. Box 2259 Little Rock, AR 722203-3259
Dear Mr. Reeves:
I am writing in response to your request for my opinion regarding the following question:
 May an Alcohol Beverage Control [ABC] agent, a certified law enforcement officer, in the course of making an arrest for alcohol sales to a minor, seize a retail store closed circuit videotape recorder and tape as evidence of the sale of alcohol to the minor when the store owner refuses to turn over the videotape to the agent?
RESPONSE
In my opinion, assuming he had probable cause to make the arrest, an ABC agent would in all likelihood be justified in confiscating the tape as corroborating evidence. However, absent some factual predicate not apparent in your request as posed, I believe it is more questionable whether an officer would be justified in also seizing the videotape recorder.
At issue is whether the seizure described in your request would violate the Fourth Amendment to the U.S. Constitution, which provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Accord Ark. Const. art. 2, § 15.
As the Arkansas Supreme Court noted in Hosto v. Brickel, 265 Ark. 147,151-52, 577 S.W.2d 401 (1979):
 Protection is afforded only against unreasonable searches. South Dakota v. Opperman, 128 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); Wickliffe v. State, 258 Ark. 544, 527 S.W.2d 640; Milburn v. State, 260 Ark. 553, 542 S.W.2d 490; Young v. State, 254 Ark. 72, 491 S.W.2d 89; Thomas v. State, 262 Ark. 83, 553 S.W.2d 41. See also, Bedell v. State, 257 Ark. 895, 521 S.W.2d 200, cert. den., 430 U.S. 931, 97 S.Ct. 1552, 51 L. Ed. 2d 775 (1977); Wyman v. James, 400 U.S. 309, 91 S.Ct. 381, 27 L.Ed.2d 408 (1971). This does not mean that a search without a warrant is necessarily unreasonable and there are many well-recognized types of warrantless searches that do not violate these constitutional protections. See Milburn v. State, supra; Morris v. State, 259 Ark. 755, 536 S.W.2d 298; Wickliffe v. State, supra; Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). The basic and essential purpose of these provisions is to protect the individual against unreasonable governmental intrusions into his privacy, whenever and wherever his expectation of privacy is legitimate. U.S. v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538
(1977); South Dakota v. Opperman, supra; Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); Jones v. U.S., 357 U.S. 493, 78 S.Ct. 1253,2 L.Ed.2d 1514 (1958). The reasonableness of a search in any case must be decided upon the basis of the existing facts and circumstances. Moore v. State, 244 Ark. 1197, 429 S.W.2d 122, cert. den. 393 U.S. 1063, 89 S.Ct. 714, 21 L.Ed. 2d 705 (1969); Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967); South Dakota v. Opperman, supra. One of the most important factors to be considered is the existence, extent and legitimacy of the citizen's right to expectation of privacy under the circumstances. U.S. v. Chadwick, supra; South Dakota v. Opperman, supra. See Perez v. State, 260 Ark. 438, 541 S.W.2d 915; Gerard v. State, 237 Ark. 287, 372 S.W.2d 635. See also, Sanders v. State, 262 Ark. 595, 559 S.W.2d 704; Air Pollution Variance Board v. Western Alfalfa Corp., 416 U.S. 861, 94 S.Ct. 2114, 40 L.Ed.2d 607 (1974).
As reflected in the following from New York v. Burger, 482 U.S. 691,699-700 (1987), a lesser expectation of privacy attaches to commercial property than to private homes:
 The Court long has recognized that the Fourth Amendment's prohibition on unreasonable searches and seizures is applicable to commercial premises, as well as to private homes. See v. City of Seattle, 387 U.S. 541, 543, 546 (1967). An owner or operator of a business thus has an expectation of privacy in commercial property, which society is prepared to consider to be reasonable, see Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). This expectation exists not only with respect to traditional police searches conducted for the gathering of criminal evidence but also with respect to administrative inspections designed to enforce regulatory statutes. See Marshall v. Barlow's, Inc., 436 U.S. 307, 312-313 (1978). An expectation of privacy in commercial premises, however, is different from, and indeed less than, a similar expectation in an individual's home. See Donovan v. Dewey, 452 U.S. 594, 598-599 (1981). This expectation is particularly attenuated in commercial property employed in "closely regulated" industries. The Court observed in Marshall v. Barlow's, Inc.: "Certain industries have such a history of government oversight that no reasonable expectation of privacy, see Katz v. United States, 389 U.S. 347, 351-352 (1967), could exist for a proprietor over the stock of such an enterprise." 436 U.S., at 313.
Accord, Minnesota v. Carter, 525 U.S. 83, 90-91 (citing Burger); UnitedStates v. Dunn, 480 U.S. 294, 314 (1987) (recognizing that the respondent had a reasonable expectation of privacy in his commercial barn). Seealso Ramerman, Shut the Blinds and Lock the Doors — Is That Enough?: TheScope of Fourth Amendment Protection Outside Your Own Home, 75 Wash. L. Rev. 281 (2000) (generally reviewing case law on searches of commercial premises); enclosed Ark. Op. Att'y Gen. No. 2000-324 (same).
In Blackwell v. State, 338 Ark. 671, 672, 1 S.W.3d 399 (1999), the court offered the following analysis in rejecting a dentist's Fourth Amendment challenge to the warrantless seizure of business records that led to his conviction for Medicaid fraud:
 Where appellant's right to participate in the State's Medicaid Program depended upon his agreement to provide his business records to the State upon request, and appellant was aware that audits were possible under Arkansas's statutes and regulations conducted pursuant to a criminal investigation, yet, he still signed an agreement to participate in Arkansas's Medicaid Program, appellant consented to the State's entering his office to audit his records; the trial court properly in denied his motion to suppress.
See A.C.A. § 5-55-104 (Repl. 1997) (requiring Medicaid participants to agree to warrantless inspection of records). In support of its holding, the court in Blackwell recited the following pronouncement on the subject by the Eighth Circuit Court of Appeals:
 "The government has a substantial interest in establishing methods by which it can effectively monitor compliance with the regulations governing the Medicaid Program and root out opportunities and instances of fraud. We see no constitutional infirmity in the government requiring a provider to agree to maintain records of Medicaid transactions and to permit periodic audits of those records as a condition for participation in the Medicaid Program. In this case, the appellants were aware of this condition, and voluntarily entered into a contract with [the State] in which they authorized such audits in exchange for obtaining the benefits attendant to participation in the Medicaid Program. Accordingly, we hold that the appellants explicitly consented to reasonable warrantless inspections of the pharmacy records by entering into the contract with [the State]."
338 Ark. at 678, quoting United States v. Brown, 763 F.2d 984, 987 (8th
Cir. 1985). See also Griffin v. Wisconsin, 483 U.S. 868 (1987); Cherryv. State, 302 Ark. 462, 791 S.W.2d 354 (1990) (each approving probationer's enforced consent to warrantless search of home, but only when authorities had "reasonable grounds" to believe contraband was present).
It is beyond dispute that the sale of alcoholic beverages is a closely regulated industry, see the Arkansas Alcoholic Control Act, A.C.A. §3-2-101 et seq. (Repl. 1996 Supp. 2001), meaning that a vendor's reasonable expectation of privacy in his commercial premises is considerably less than would apply to his private residence. Moreover, A.C.A. § 3-2-210(a) further qualifies that expectation as follows:
 The right of any enforcement agent or law enforcement officer to enter, search, inspect records, and seize contraband in or on any licensed premises shall be deemed to be a condition of the license or permit to sell alcoholic beverages granted by this state.
I believe this statute would clearly authorize the seizure of a videotape that should confirm the independently observed circumstances creating probable cause to effect an arrest for illegally selling alcohol to a minor. I am only reinforced in this conclusion by the fact that the videotape camera, which the authorities might reasonably assume contained a tape documenting the alleged crime, was in all likelihood in plain view at the time of the arrest. As the Arkansas Supreme Court observed inFultz v. State, 333 Ark. 586, 593, 972 S.W.2d 222 (1998):
 When police officers are legitimately at a location and acting without a search warrant, they may seize an object in plain view if they have probable cause to believe that the object is either evidence of a crime, fruit of a crime, or an instrumentality of a crime. Arizona v. Hicks, 480 U.S. 321 (1987); Coolidge, 403 U.S. at 464-74.
Finally, I am considerably less confident that the authorities would be justified in seizing the videotape camera as well, since, unlike the tape, the camera in itself would appear to have little or no probative value. Seizing the camera absent some clearly reasonable ground for doing so strikes me as particularly questionable given that the seizure, in the short term at least, would deprive the business of a significant security measure.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh
Enclosure