Rodell AVERY *v.* STATE of Arkansas

CA CR 04-395 217 S.W.3d 162

Court of Appeals of Arkansas
Opinion delivered November 16, 2005

116

*Clay Law Firm*, by: *Alvin D. Clay*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

WENDELL L. GRIFFEN, Judge. Rodell Avery, Jr., appeals from his convictions for one count of aggravated robbery, three counts of kidnapping, and one count of second-degree escape. He argues that the evidence is not sufficient to support his conviction for kidnapping, that the trial court erred in denying his motions to have an independent mental evaluation and to hold a competency hearing, that the circuit court lacked jurisdiction to try him for the escape charge, and that the trial court erred in refusing to set aside his convictions even though two of the prosecutors had previously represented him. We affirm on each point.

Appellant was charged with aggravated robbery and kidnapping in connection with events that the State alleged took place on April 17, 2002, in Thornton, Arkansas, which is in Calhoun County. On that date, two men forced Robert and Margaret Rosenbaum and their toddler granddaughter into the Rosenbaums' home and robbed them at gunpoint; also present was the Rosenbaums' two-month old grandson. Mrs. Rosenbaum identified appellant from a photographic line-up; he was apprehended

later that same day near Fordyce in Dallas County. Appellant escaped in Dallas County while being escorted back to Calhoun County by Calhoun County officers. He was apprehended nearly four months later and was charged with second-degree escape.

Prior to trial, appellant requested and received a mental evaluation; the evaluation indicated that he was fit to stand trial. Appellant thereafter filed a motion for an independent mental evaluation, but failed to obtain one. After two hearings during which he presented no evidence regarding his mental status, appellant requested a competency hearing. That request was denied by the trial court because appellant had been declared fit to proceed and because he failed to obtain an independent mental evaluation.

Appellant received a jury trial and was convicted of all charges. He was sentenced to serve 360 months for the aggravated robbery and kidnapping charges, and to serve a consecutive term of 120 months for the escape charge.

## I. Kidnapping

■ Appellant's first argument is that the trial court erred in denying his motion for a directed verdict on the kidnapping charge. We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Jordan v. State*, 356 Ark. 248, 147 S.W.3d 691 (2004). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.*

Appellant was charged with kidnapping under Ark. Code Ann. § 5-11-102(a)(3) (Repl. 1997), which provides that a person commits kidnapping if, without consent, he restrains another person so as to interfere substantially with his liberty with the purpose of facilitating the commission of any felony or flight thereafter. Appellant argues that the State's evidence regarding the kidnapping was insufficient because the State failed to demonstrate that any force was used beyond that force necessary to commit the offense of aggravated robbery.

It is true that a defendant may be prosecuted for kidnapping only when the restraint used exceeds the restraint that is normally incidental to the crimes of rape or robbery. *Moore v. State*, 355 Ark. 657, 144 S.W.3d 260 (2004). However, we summarily affirm appellant's kidnapping convictions without reaching the merits of his argument because he is attempting to change the grounds for his argument on appeal.

At the conclusion of the State's case-in-chief, appellant's counsel made the following motion:

> Judge, as it related to kidnapping, they have to show restraint, and for the purpose of causing physical injury. There as been no, no testimony as it relates to any kind of physical injury.

The trial court denied this motion.[1] At the close of all of the evidence, appellant's counsel stated, "we renew all of the motions including the directed verdict and all of the prior motions that have been made in this case." The trial court again denied appellant's motion.

▆ Thus, it is clear that appellant did not raise a challenge below to the State's proof regarding whether the physical restraint imposed exceeded that necessary to commit aggravated robbery — he solely challenged whether the restraint was for the purpose of causing physical injury.[2] A party cannot change the grounds for a directed-verdict motion on appeal, but is bound by the scope and nature of the argument presented at trial. *Marbley v. State*, 81 Ark. App. 165, 100 S.W.3d 148 (2003) (refusing to address an argument that the degree of restraint used during a kidnapping did not exceed the force necessary to commit rape, where that argument was not the basis for the defendant's directed-verdict motion). Accordingly, we affirm appellant's kidnapping convictions.

## II. Mental Evaluation

Appellant's next argument is that the trial court erred in denying his motion for an independent mental evaluation and in denying his request to hold a mental competency hearing. Appellant argues that he had the right to be examined by an examiner of his own choosing and that the trial court was required to hold a competency hearing because he challenged the court-ordered mental evaluation report. *Greene v. State*, 335 Ark. 1, 977 S.W.2d 192 (1988). We hold that the trial court did not err because appellant was not entitled to a second court-ordered mental evaluation and because he, in fact, received a competency hearing.

---

[1] Appellant failed to abstract his motions for a directed verdict; however, the State did so in its supplemental abstract.

[2] Appellant appears to have confused the "physical force" required to show robbery pursuant to Ark. Code Ann. § 5-12-102(a) (Repl. 1997), with the "physical restraint" required to show kidnapping for the purpose of inflicting physical injury under Ark. Code Ann. § 5-11-102(a)(4) (Repl. 1997).

. If a defendant files notice that he or she intends to rely on the defense of mental disease or defect the trial court is required to stay criminal proceedings and to order a mental examination. Ark. Code Ann. § 5-2-305(a)(1)(A) and (b)(1) (Supp. 2005). Further, when a defendant wishes to be examined by a doctor of his own choice, that doctor shall be permitted to have reasonable access to the defendant for the purposes of examination. Ark. Code Ann. § 5-2-306 (Repl. 1997). Additionally, Ark. Code Ann. § 5-2-309 (Repl. 1997) provides:

> (a) If the defendant's fitness to proceed becomes an issue, it shall be determined by the court.
>
> (b) If neither party contests the finding of the report filed pursuant to 5-2-305, the court may make the determination on the basis of the report.
>
> (c) If the finding is contested, the court shall hold a hearing on the issue.

On January 27, 2003, pursuant to § 5-2-305, appellant filed a motion for a mental examination at the Arkansas State Hospital. That same day, the trial court ordered the examination, which was ultimately conducted by Dr. William Peel. In his evaluation, filed on May 28, 2003, Dr. Peel concluded that appellant was able to conform his conduct to the requirements of the law at the time of the offense, that appellant understood the nature of the legal proceedings against him, and that he was competent to stand trial.

On July 7, 2003, pursuant to Ark. Code Ann. § 5-2-203, appellant filed a notice that he would raise the defense of mental disease or defect at his trial and also requested to have a mental evaluation performed by the examiner of his own choosing. At a hearing held on appellant's motion, on August 21, 2003, appellant's counsel informed the court that appellant had not been evaluated, due to unspecified "logistical" and financial problems.[3] Counsel further stated that he had enlisted the assistance of two attorneys to make arrangements for an evaluation in Little Rock. Counsel stated that the evaluation would probably be scheduled within the next two weeks and that it would not affect the trial,

---

[3] Appellant did not abstract the August 21 proceedings but the State provided this information in its supplemental abstract.

which had been scheduled for September 15, 2003. Counsel emphasized that he was "not asking for a delay of the trial days." The trial court informed the parties that the trial was set for September 15 and that appellant was entitled to "whatever you can obtain."

In the absence of any independent evaluation obtained by appellant, on September 5, 2003, the court entered an order declaring appellant fit to proceed based on Dr. Peel's evaluation, and again notified the parties that the trial would proceed on September 15. Another hearing was set for September 11, 2003. On that same day (September 5), appellant filed a motion requesting a second evaluation under § 5-2-305 and expressly requesting a competency hearing. During the hearing, the trial judge noted that appellant had done nothing since the August 21 hearing to obtain an independent evaluation and informed the parties that the trial would proceed as planned based on Dr. Peel's evaluation. In a motion for a competency hearing filed on September 12, 2003, three days prior to trial, appellant for the first time specifically contested the trial court's determination that he was fit to proceed.

On these facts, we hold, first, that the trial court did not err in denying appellant's request for a second evaluation. A defendant is not automatically entitled to a *second* evaluation simply because, after the first evaluation, he raises the defense of mental defect or mental incapacity or contests the first evaluation. Whether a second mental evaluation is necessary is within the trial court's discretion to determine. *Barnes v. State*, 346 Ark. 91, 55 S.W.3d 271 (2001); *Dirickson v. State*, 329 Ark. 572, 953 S.W.2d 55 (1997). Moreover, it is not an abuse of the trial court's discretion to deny a second examination to a defendant who fails to act diligently to secure the necessary information on which to establish the defense of mental disease or defect. *Dirickson, supra* (holding that a defendant who did not raise the issue of incompetency at the first opportunity and who waited over one month after receiving notice of the mental evaluation to request supporting documents was not entitled to a second mental evaluation).

Appellant here did not act with diligence to secure the information necessary to establish his defense of mental disease or defect, namely the independent evaluation. It is the defendant's burden to prove the existence of a mental disease or defect. *Dirickson, supra.* Even though appellant requested an independent mental evaluation by an examiner of his choice *two months prior to*

*trial*, and despite reassurances to the trial court that the evaluation was forthcoming, appellant never obtained an independent evaluation and never presented evidence supporting that he was mentally incompetent. Therefore, the trial court did not err in determining that appellant was not entitled to a second court-ordered mental evaluation.

■ Nor did the trial court err in denying appellant's request for a competency hearing. Appellant is correct that the trial court was required under § 5-2-309(c) to hold a hearing when he contested the findings of the mental evaluation through his motions and his attorney's arguments. However, the case cited by appellant, *Greene, supra*, is inapposite because in that case, *no hearing* was held and thus, the defendant was denied any opportunity to raise his objections to the mental evaluation. By contrast here, the trial court conducted two hearings, one on August 21 and one on September 11, during which appellant's attorney specifically asserted *that appellant was mentally unfit to stand trial*.

In short, appellant cannot demonstrate prejudice because he, in fact, was granted a competency hearing; the August 21 hearing (and possibly the September 11 hearing) served as his competency hearing. The August 21 hearing was held in response to appellant's notice of his intent to rely on the defense of mental disease or defect and his request for an independent mental examination. A letter sent by the case coordinator to appellant's attorney indicated that the August 21 hearing was being held "regarding the mental condition of the defendant." Thus, appellant was clearly on notice that his mental competency would be the subject of the August 21 hearing. However, he did not object to the hearing, did not request a continuance, and did not assert that his rights concerning a competency hearing were being violated in any way.

■ Moreover, during the August 21 hearing, appellant offered no proof that he suffered from a mental disease or defect, but focused on the fact that he had requested an independent mental evaluation, which he had not yet obtained. Thus, the only evidence that the court had before it during this hearing was Dr. Peel's report that appellant was mentally competent to proceed to trial. Accordingly, on September 5, 2003, the trial court entered an order declaring appellant fit to proceed. This order stated:

> A mental evaluation was performed on the defendant in February 2003, at the request of the defendant. *A hearing to determine fitness to*

*proceed was held on August 21, 2003.* Defendant presented no evidence to cast doubt on his fitness to proceed. Based upon the evaluation, the Court finds the defendant fit to proceed.

(Emphasis added.)

■ While appellant thereafter obtained a second hearing on September 11, during which he again failed to provide evidence of his unfitness to proceed, he never objected to the above order, and never objected that neither the August 21 nor September 11 hearing satisfied his right to a competency hearing. Appellant cites no authority requiring a trial court to conduct *subsequent* competency hearings once a competency hearing has been held, especially in the absence of any evidence indicating that a defendant has a mental disease or defect. On these facts, we cannot say the trial court erred in denying appellant's subsequent request for an additional competency hearing.

### III. Escape

■ In a post-trial motion to dismiss, appellant asserted that the Calhoun County Circuit Court had no jurisdiction to try him for the escape that occurred in Dallas County. The trial court denied the motion because appellant did not object to the court's jurisdiction prior to trial. While appellant frames his argument as a challenge to the sufficiency of the evidence, he did not move for a directed verdict on the escape charge. Clearly appellant's argument is one of jurisdiction because it challenges the trial court's power to hear a case. *State v. Osborn,* 345 Ark. 196, 45 S.W.3d 373 (2001). As such, the trial court's ruling in this respect was in error, because jurisdiction cannot be waived and can be raised at any time. *State v. Dawson,* 343 Ark. 683, 38 S.W.3d 319 (2001). Nonetheless, the trial court properly exercised jurisdiction over appellant's escape charge.

■ This case presents a question of local jurisdiction, that is where the offense is to be tried. *Osborn, supra.* Pursuant to Ark. Code Ann. § 16-88-105(b) (1987), "The local jurisdiction of circuit courts and justices' courts shall be of offenses committed within the respective counties in which they are held." Further, a circuit judge may act in a criminal case only when he is within the geographical area of the judicial district in which a charge is filed. *Waddle v. Sargent,* 313 Ark. 539, 855 S.W.2d 919 (1993). In short,

this means that a circuit judge has no jurisdiction to try offenses that are not committed in that judge's county. *State v. Vaughan*, 343 Ark. 293, 33 S.W.3d 512 (2000). However, Arkansas law recognizes that some crimes are committed in more than one county. Ark. Code Ann. § 16-88-108(c) (1987) provides: "Where the offense is committed partly in one county and partly in another, or the acts, or effects thereof, requisite to the consummation of the offense occur in two (2) or more counties, the jurisdiction is in either county."

Appellant was charged with second-degree escape, which requires the use of physical force or the threat of physical force in escaping custody. Ark. Code Ann. § 5-54-111(a)(1) (Repl. 1997) (the statute in effect when appellant escaped). A detailed recitation of the facts surrounding appellant's escape is not necessary. It is sufficient to note that he committed the offenses of aggravated robbery and three counts of kidnapping in Calhoun County and was apprehended the same day in Dallas County. He knocked down an officer and escaped, while still in Dallas County, as he was being transported back to Calhoun County by Calhoun County officers.

Appellant asserts that the offense of escape is completed the moment the suspect is out of custody and thus, is not a continuing offense. Because he was taken into custody in Dallas County and escaped in Dallas County, he maintains that Calhoun County lacked jurisdiction to try him for escape. The State concedes that Dallas County would have jurisdiction to try appellant for escape. However, it also counters that, pursuant to § 16-88-108(c), the Calhoun County Circuit Court had jurisdiction to try appellant for escape because the effects of his escape delayed for four months Calhoun County's ability to try him for the crimes he committed in that county.

We affirm pursuant to the Arkansas Supreme Court's interpretation of the "effects" clause of § 16-88-108(c) under *Osborn*, *supra*. In *Osborn*, a murder was committed in Franklin County and an investigation ensued; the suspect was interviewed in Crawford County and provided the police with false information. He was ultimately charged and convicted in Franklin County with hindering apprehension or prosecution. He appealed, arguing that the Franklin County Circuit Court lacked jurisdiction to try him.

Interpreting for the first time the effects clause of § 16-88-108(c), the *Osborn* court held that, although the act of providing

false information occurred wholly in Crawford County, jurisdiction was proper in either Franklin or Crawford County. The court reasoned that the effects requisite to the consummation of the offense, *i.e.*, hindering the apprehension or prosecution of the three murder suspects, occurred in Franklin County, where the murder occurred and where the investigation was ongoing. The court further stated that were it not for the murder in Franklin County, Osborn would not have been interviewed by police and there would have been no investigation or prosecution for him to hinder.

Here, had appellant not committed the crimes of aggravated robbery and kidnapping in Calhoun County, he would not have been placed into custody in Dallas County, he could not have escaped from that custody, and the prosecution in Calhoun County would not have been delayed. Thus, pursuant to *Osborn* and § 16-88-108(c), jurisdiction in this case was proper in either Calhoun County or Dallas County. Hence, we affirm appellant's conviction for second-degree escape.

### IV. Motion to Vacate/Conflict of Interest

Appellant's final argument is that, because two prosecutors represented him in previous criminal matters, the trial court erred in denying his post-trial motion to reverse his convictions and vacate his sentences.

The charges in the instant case were filed against appellant in 2002. During a hearing on appellant's motion to vacate, Jamie Pratt, the prosecuting attorney, admitted that he represented appellant in 1997 on a criminal matter; Gregg Parrish, the deputy prosecutor, admitted that he represented appellant on a criminal matter in 1999. Neither Parrish nor Pratt could recall the nature of their previous representation of appellant, except that it involved criminal matters. Pratt participated in only the pretrial proceedings. The case at trial was prosecuted by Parrish and Deputy Prosecutor Mark Klappenbach. Parrish and Pratt both testified that they did not recall any confidential information that appellant had provided to them. Pratt was not employed by the prosecutor's office when the charges were filed against appellant; he testified that he did not participate in discovery or other pretrial preparation of the case. He became involved in the case the week before trial. He denied using any confidential information given to him by appellant. ·

Both Parrish and Pratt testified that they did not remember representing appellant until Klappenbach reminded them of that fact the week before trial started. Parrish further testified that he informed appellant's attorney of the prior representation the first time they met, which was the Thursday before trial began on the following Monday. Appellant's trial attorney, Alvin Clay (who is also appellant's appellate counsel) admitted at the hearing that he knew before trial that Parrish and Pratt had previously represented appellant, but that he filed no motion for the prosecutor's office to recuse prior to trial.

The trial court denied appellant's motion to vacate on two independent grounds: that appellant failed to raise the issue in a timely manner and that there was no conflict of interest. Appellant now appeals only the trial court's finding that there was no conflict of interest; he does not appeal the trial court's finding that he failed to raise the issue in a timely manner. That alone is sufficient reason for this court to affirm the trial court's denial of appellant's motion to vacate. We will not reverse where a trial court bases its ruling on more than one independent ground, but the appellant challenges only one of those grounds. *Pugh v. State*, 351 Ark. 5, 89 S.W.3d 909 (2002).

However, had appellant challenged both findings, we would affirm on both grounds. First, we agree that he did not raise the issue in a timely manner. Appellant's attorney admitted that he knew of the prior representation before trial, yet failed to raise the issue until after trial. Thus, appellant could have attempted to cure an alleged defect, but failed to do so and his failure to do so should not inure to his benefit on appeal. *Williams v. State*, 327 Ark. 97, 923 S.W.2d 547 (1997).

We would also affirm on the merits of appellant's conflict-of-interest argument. Arkansas Rule of Professional Conduct 1.9 provides:

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

. . .

(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

(1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known.

Additionally, Rule 1.11(d)(2)(I) provides that a lawyer currently serving as a public officer or employee shall not participate in a matter in which the lawyer participated personally and substantially while in private practice, unless the appropriate government agency gives its written, informed consent to the same. In short, Parrish and Pratt's involvement in appellant's prosecution in this case was not improper because it did not involve the use of information relating to the prior representation and did not involve the same or substantially related matter as the prior representation.

Appellant notes that during the cross-examination of his mother, Parrish questioned her about the fact that appellant had three different children by three different women and that two of the mothers had obtained restraining orders against him. Appellant asserts that this information was not in the prosecutor's file, and therefore, Parrish's knowledge of the same must have come from confidential information he obtained from appellant during his prior representation of appellant. Appellant is simply wrong in this regard — the information regarding the restraining orders brought by the mothers of appellant's children is contained in Dr. Peel's report, which, although appellant failed to abstract it, is part of the record in this case.

Further, a prosecutor is not automatically prohibited from prosecuting any former client; the law does not require that a trial court disqualify a duly-elected prosecutor unless there is some evidence of specific misconduct. *Logan v. State*, 299 Ark. 266, 773 S.W.2d 413 (1989). Rather, as noted above, the rules prohibit a prosecutor from representing another person, here, the State, in the same or substantially related matter in which the State's interests are materially adverse to defendant.

There was no conflict of interest here because appellant failed to allege or prove that this case involved the same or a substantially related matter as the matters in which Pratt and

Parrish previously represented him. The mere fact that the current case is a criminal case and that the prior representations also involved criminal matters does not establish that the cases involved the same or a substantially related matter. Finally, the cases cited by appellant simply do not compel reversal because, unlike the instant case, they involved circumstances in which the prosecutor who was involved in the case represented the defendant in the same or a substantially related matter in the prior. representation or in which the information used by the prosecutor was based on his prior relationship with the defendant.

Affirmed.

ROBBINS and BIRD, JJ., agree.