SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CR–14–763

| | |
|---|---|
| | Opinion Delivered  April 29, 2015 |
| MARIO D. THOMPSON<br>APPELLANT | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. CR-2012-709-1; NO. CR-2014-776-1] |
| V. | |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE WILLIAM A. STOREY, JUDGE |
| | AFFIRMED |

## BRANDON J. HARRISON, Judge

Mario Thompson appeals his convictions for sexual assault and rape, arguing that the circuit court erred in (1) denying his motion for directed verdict, (2) denying his motion for severance, (3) denying his motion to suppress his statement to the police, (4) not allowing a certain forensic evaluation into evidence, (5) not allowing certain testimony pursuant to Ark R. Evid. 404(b), and (6) denying his motion to quash the jury panel. We affirm.

In case number CR-2012-709-1, Thompson was charged with two counts of sexual assault in the second degree. In case number CR-2014-776-1, he was charged with one count of rape. The cases were tried together, and a jury found Thompson guilty of all charges and fixed sentences of ten years' imprisonment for each count of sexual assault and twenty-five years' imprisonment for rape. The court imposed the sentences to

SLIP OPINION

run consecutively, and Thompson has now appealed. Specific facts pertinent to the points on appeal will be discussed below.

## I. *Sufficiency of the Evidence*

The State's evidence in this case can be summarized as follows. Fourteen-year-old J.C., the victim in CR-2012-709-1, testified that when she was five years old, her babysitter was Thompson's mother, Laverne Thompson. J.C. explained that she and several other children stayed at Laverne's house during the summer and after school and that Thompson was there, too. On several occasions during naptime, while the other children were sleeping, Thompson took her to his bedroom, took her clothes off, positioned himself over her "in a push up position," and put his penis into her vagina. J.C. testified that this also happened at her house when Thompson babysat her on his own, at the Boys and Girls Club in an equipment room, and once when Thompson picked her up from the Boys and Girls Club, drove her to a house that was under construction, and did "the same thing." She agreed that she was approximately five to seven years old when these incidents occurred and that she guessed Thompson was "sixteen or seventeen." J.C. said that she did not tell anyone about the abuse when it happened because Thompson told her not to and she was scared. J.C. told her mother about the prior abuse when she was twelve years old.

Officer Malachi Samuels of the Fayetteville Police Department testified that he interviewed Thompson on 7 March 2012. Samuels agreed that during the course of the interview, Thompson initially denied sexual contact with J.C. but later admitted to it. Thompson also admitted that he sent J.C.'s mother a Facebook message apologizing for

"having intercourse" with J.C. Samuels explained that, according to his investigation, Thompson had access to J.C. from 2005 to 2008, and with Thompson's birth date in September 1987, he was between seventeen and twenty years old during that time.

Terri Center, J.C.'s mother, testified that she received a Facebook message from Thompson on 6 March 2012, apologizing for "all that I have done in the past." When Center asked if he had hurt J.C., Thompson responded, "No when I use[d] to babysit them and have any intercource [sic] with her like sex." Center testified that she reported the sexual abuse to the police that same day.

Jeanette Walker, mother of K.W., the victim in CR–2014-766-1, testified that her son and Thompson were in "Explorers" together, which is akin to the Boy Scouts but focused on law-enforcement duties. Walker was a Deputy First Class at the Washington County Sheriff's Office, and Thompson volunteered at the Sheriff's Office in the dentention center. She explained that Thompson and her son were friends and that Thompson would sometimes come to her home. According to Walker, in the summer of 2007, there was an instance in which her daughter, nine-year-old K.W., wanted to go swimming, so Walker allowed Thompson to take K.W. to the swimming pool.

Sixteen-year-old K.W. testified that she first met Thompson when she was approximately seven years old. She said that when she was nine or ten years old, Thompson offered to take her swimming and her mother allowed her to go. At the swimming facility, Thompson told her to go into the family changing room with him. Thompson then locked the door, turned out the lights, and started touching her breasts and vagina. He also put his penis inside her vagina. He told her afterward that if she told

SLIP OPINION

anyone, they would both get into trouble. She explained that she did not tell anyone about the incident until recently because she was scared and "didn't want to be the weird girl that got raped." She also testified that a similar incident happened again a short time later, again at the swimming facility's family changing room.

Detective Richard Firsby with the Springdale Police Department testified that when this incident occurred, K.W. was nine years old and Thompson was nineteen.

Sue Stockton, a sexual-assault examiner with a specialty in pediatrics, testified that she examined K.W. on January 28, 2014, and that K.W. had a normal genital exam. She also said that a child can be penetrated without injury and that it is very difficult to diagnose vaginal penetration if a long period of time has passed.

In his directed-verdict motion below, Thompson argued that the State had failed to prove sexual gratification or penetration, that both victims' testimony was not credible and insufficient to sustain a conviction, and that his age when the alleged offenses occurred had not been proven. On appeal, Thompson similarly argues that the State failed to provide sufficient evidence of penetration in CR-2014-776-1 and that, in both cases, the victims' testimony was not credible and the State failed to prove his age at the time of the offenses.

This court treats a motion for directed verdict as a challenge to the sufficiency of the evidence. *See Tubbs v. State*, 370 Ark. 47, 257 S.W.3d 47 (2007). In reviewing a challenge to the sufficiency of the evidence, we determine whether the verdict is supported by substantial evidence, direct or circumstantial. *Id*. Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id*. This court views the evidence in the light most favorable to the

verdict, and only evidence supporting the verdict will be considered. *Id.* The credibility of witnesses is an issue for the jury and not the court. *Morgan v. State*, 2009 Ark. 257, 308 S.W.3d 147. The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Id.*

A person commits rape if he engages in sexual intercourse or deviate sexual activity with another person who is less than fourteen years of age. Ark. Code Ann. § 5-14-103(a)(3)(A) (Repl. 2013). "Deviate sexual activity" is defined as "any act of sexual gratification involving the penetration, however slight, of the labia majora or anus of a person by any body member or foreign instrument manipulated by another person." Ark. Code Ann. § 5-14-101(1)(B) (Repl. 2013). A person commits the offense of second-degree sexual assault if he, being eighteen years of age or older, engages in sexual contact with another person who is less than fourteen years of age and not the person's spouse. Ark. Code Ann. § 5-14-125(a)(3) (Repl. 2013). "Sexual contact" is defined as "any act of sexual gratification involving the touching, directly or through clothing, of the sex organs, buttocks, or anus of a person or the breast of a female." Ark. Code Ann. § 5-14-101(10) (Repl. 2013).

We reject Thompson's arguments. Both victims testified that Thompson penetrated their vaginas with his penis, and a rape victim's uncorroborated testimony describing penetration may constitute substantial evidence to sustain a conviction of rape, even when the victim is a child. *Brown v. State*, 374 Ark. 341, 288 S.W.3d 226 (2008). The rape victim's testimony need not be corroborated, and scientific evidence is not

SLIP OPINION

required. *Kelley v. State*, 375 Ark. 483, 292 S.W.3d 297 (2009). Thompson's argument that the victims are not credible was an issue for the jury to decide. *Morgan*, *supra*.

Finally, regarding his age when the offenses occurred, Officer Samuels's testimony established that Thompson was between seventeen and twenty years old over the course of time that he sexually abused J.C., so the jury could have reasonably concluded that at least two of the sexual assaults occurred after Thompson turned eighteen. In addition, Officer Firsby testified that Thompson was nineteen at the time of K.W.'s rape. No rebuttal evidence was presented. Therefore, we hold that substantial evidence supports Thompson's convictions.

II. *Motion for Severance*

Thompson was charged in CR–2012–709–1 on 9 May 2012. In July 2012, Thompson filed a notice of his intent to raise mental disease or defect as a defense and asked the court to suspend the proceedings pursuant to Ark. Code Ann. § 5-2-305 (Supp. 2011). In October 2012, Dr. Robin Ross performed a forensic evalution of Thompson and diagnosed him with mild mental retardation with a full scale IQ of 62. Dr. Ross concluded that Thompson (1) had a mental defect, and (2) lacked the capacity to assist effectively in his own defense. As a result, Thompson was committed to the Department of Human Services "for detention, care, and treatment until restoration of fitness to proceed."

In May 2013, Dr. Richard Back examined Thompson and also found that Thompson had a mental defect, namely retardation, with a full scale IQ of 53. Back also opined that Thompson did not have the capacity to appreciate criminality of his conduct,

to conform his conduct to requirements of law, or to engage in purposeful conduct. In July 2013, however, Dr. Michael Simon performed another evaluation at the Arkansas State Hospital; Dr. Simon agreed that Thompson had a mental defect (mild mental retardation), but opined that Thompson did not lack the capacity to understand the proceedings against him, appreciate the criminality of his conduct, conform his conduct to the requirements of the law, or form the required culpable mental state. Dr. Simon also noted that recent testing rated Thompson's IQ at 64. After a competency hearing in November 2013, Thompson was declared fit to proceed.

On 17 March 2014, the State filed a motion for continuance, explaining that the State intended to charge Thompson with additional charges "that involve the same motive, common scheme or plan," and requesting that the new charges be tried at the same time as the current charges in CR–2012-709-1. The motion was granted, and on April 29, Thompson was charged in CR–2014-776-1 with one count of rape.

Thompson filed a notice of his intent to raise mental disease or defect as a defense to the new charge and asked the court to suspend the proceedings pursuant to Ark. Code Ann. § 5-2-305. Thompson also filed a motion to sever the two cases, arguing that the accused acts underlying the two cases "are not connected in their commission nor is there a common element of substantial importance in the commission of the two crimes." Because there was no single scheme or plan, he argued, he was entitled to severance under Rule 22.2 of the Arkansas Rules of Criminal Procedure. Additionally, Thompson argued that the cases should be severed because his mental status with regard to the 2014 charge had not been addressed by any mental–health professional.

SLIP OPINION

The court heard arguments on the motions in May 2014 and questioned what had changed since the time Thompson had been declared competent to proceed in November 2013 other than the additional charges being filed. The State argued that nothing had changed, that both cases involved similar acts and circumstances, and that, under the pedophile exception, the evidence in one case would be admissible in the other case, so severance was not required. In its ruling, the court found:

> I think clearly because the evidence in each case of the other conduct or alleged conduct of the Defendant would be admissible in the respective cases, I think that standing alone would be reason to not grant the motion to sever. However there may well be, it appears there is similar conduct or alleged conduct on the part of the Defendant and clearly on the issue of lack of mistake or a possible plan, again, the evidence of his alleged conduct would be admissible so for all of those reasons I'll deny the Motion to Sever[.]

The decision of whether to grant a defendant's motion for severance of two or more offenses lies within the circuit court's discretion, and this court will not reverse absent an abuse of discretion. *Passley v. State*, 323 Ark. 301, 915 S.W.2d 248 (1996). Where, however, the offenses are joined solely on the basis that they are of the same or similar character, a defendant has an absolute right to their severance. *Id.* Rule 22.2 of the Arkansas Rules of Criminal Procedure provides further that the circuit court should grant a motion to sever if necessary for a fair trial of each offense. Our supreme court has held that when each victim's testimony would be admissible in the trial of the other to show a defendant's intent, motive, or common scheme or plan, then there is no abuse of discretion in refusing to sever two cases. *Parish v. State*, 357 Ark. 260, 163 S.W.3d 843 (2004); *see also Lukach v. State*, 310 Ark. 119, 835 S.W.2d 852 (1992) (holding that the

SLIP OPINION

circuit court did not abuse its discretion in refusing a motion to sever separate charges of rape committed against the appellant's two nieces).

Here, Thompson argues that all the psychiatric examinations introduced before the circuit court had focused on his mental status at the time of the charges alleged in CR–2012-709 and that the cases should have been severed so that his mental state at the time of the charges alleged in CR–2014-766-1 could be determined. He also asserts that the two cases involved separate and distinct crimes, with no single plan or scheme, so he was entitled to his right of severance under Rule 22.2.

Thompson's Rule 22.2 argument is mistaken given the cases involving Rule 404(b) evidence. *See Parish*, *supra*, and *Lukach*, *supra*. Thompson conceded below that the victims' testimony would be admissible under Rule 404(b) if the charges were tried separately. His argument that he was entitled to a second mental-health evaluation is likewise mistaken, as a defendant is not automatically entitled to a second evaluation simply because, after the first evaluation, he raises the defense of mental defect or mental incapacity or contests the first evaluation. *Avery v. State*, 93 Ark. App. 112, 217 S.W.3d 162 (2005). Whether a second mental evaluation is necessary is within the circuit court's discretion to determine. *Id.* In this case, the crimes occurred during the same time frame, and the circuit court correctly noted that there had been no change in Thompson's mental status since the November 2013 determination that he was fit to proceed. Thus, we hold there was no abuse of discretion in the circuit court's denial of the motion for severance.

SLIP OPINION

III.  *Motion to Suppress*

On 7 March 2012, Thompson was interviewed by Detective Samuels.  In that interview, Thompson agreed that "something inappropriate" had happened between him and J.C., and he later admitted to touching her vagina with his penis and ejaculating on her.  In November 2013, Thompson filed a motion to suppress this statement, arguing that, due to his mental disability, he could not understand his *Miranda* rights and the consequences of waiving them, so his statement was involuntary and inadmissible.

A hearing on the motion was held in March 2014.  Detective Samuels testified that he advised Thompson of his *Miranda* rights by reading them out loud while Thompson followed along.  Samuels stated that Thompson responded to his questions and appeared to understand what was being said.  Samuels explained that he had Thompson read aloud the last paragraph on the *Miranda* rights form, which stated:  "I have read the statement of my rights and I understand what my rights are.  No promises or threats have been made to me and no pressure or coercion of any kind has been used against me."  Samuels said that Thompson appeared to understand what that paragraph meant and that Thompson initialed each of his rights on the form and signed and dated it at the bottom.  Samuels agreed that, to the best of his knowledge, Thompson's statement was given freely and voluntarily.  On cross-examination, Samuels described Thompson as "slower intellectually than others" but still capable of understanding what is being asked.  On redirect, Samuels testified that he did not coerce or threaten Thompson in any way and reiterated that Thompson had read aloud the last paragraph on the *Miranda* rights form and agreed with that statement.

SLIP OPINION

Thompson argued that under Ark. Code Ann. § 5-4-618 (Repl. 2013), an IQ of 65 or below creates a presumption of mental retardation, and the mental evaluations performed after his arrest rated his IQ in a range from 53 to 64. He asserted that the presumption "had not been and cannot be rebutted" and that he was "effectively unable to intelligently, knowingly waive any right that he has." Thus, he argued, his statement should be suppressed.

The State responded that Thompson had already been found competent to stand trial, that he performed poorly on the mental evaluations because he did not try, and that Detective Samuels had done a good job of explaining to Thompson his rights and giving him ample opportunity to ask questions. The State asserted that Thompson "does understand what is going on" and requested that the motion to suppress be denied. The court took the matter under advisement and, at a later hearing in May 2014, denied the motion to suppress, stating that "the State met its burden on that issue." The State later introduced an audio recording of the interview, as well as the transcript, during its case-in-chief.

A statement made while in custody is presumptively involuntary, and the burden is on the State to prove by a preponderance of the evidence that a custodial statement was given voluntarily. *Bell v. State*, 371 Ark. 375, 266 S.W.3d 696 (2007). In *Grillot v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003), our supreme court clarified the appropriate standard of review for cases involving a circuit court's ruling on the voluntariness of a confession—we make an independent determination based upon the totality of the circumstances. We review the circuit court's findings of fact for clear error, and the

SLIP OPINION

ultimate question of whether the confession was voluntary is subject to an independent, or de novo, determination by the appellate court. *Clark v. State*, 374 Ark. 292, 287 S.W.3d 567 (2008).

To determine whether a waiver of *Miranda* rights is voluntary, knowing, and intelligent, we look to see if the statement was the product of free and deliberate choice rather than intimidation, coercion, or deception. *Flanagan v. State*, 368 Ark. 143, 243 S.W.3d 866 (2006). To make this determination, we review the totality of the circumstances surrounding the waiver including the age, education, and intelligence of the accused; the lack of advice as to his constitutional rights; the length of the detention; the repeated and prolonged nature of the questioning; the use of mental or physical punishment; and statements made by the interrogating officers and the vulnerability of the defendant. *Id.* We will reverse a circuit court's ruling on this issue only if it is clearly against the preponderance of the evidence. *Id.* Evaluating the credibility of witnesses who testify at a suppression hearing about the circumstances surrounding an appellant's custodial confession is for the circuit court to determine, and this court defers to the circuit court in matters of credibility. *Shields v. State*, 357 Ark. 283, 166 S.W.3d 28 (2004).

As mentioned, Thompson argues that because of his mental retardation, he lacked the capacity to understand or waive his *Miranda* rights when interviewed by Detective Samuels, so all his statements were involuntary and inadmissible. But our supreme court has held that while mental capacity is a factor we consider, it alone is not sufficient to suppress a confession. *Misskelley v. State*, 323 Ark. 449, 915 S.W.2d 702 (1996).

12

Likewise, a low score on an intelligence-quotient test does not mean that a suspect is incapable of voluntarily making a confession or waiving his right. *Id.*

In reviewing the totality of the circumstances, we also note that Thompson was twenty-four years old when he gave his statement and had a high-school education. Detective Samuels testified that Thompson appeared to understand his rights and gave his statement after voluntarily waiving those rights. Thompson also signed, dated, and initialed the *Miranda* rights form and never indicated that he did not understand his rights. Based on these points, *Misskelley*, *supra*, and our deference to the circuit court in matters of credibility, we hold that the denial of the motion to suppress was not clearly against the preponderance of the evidence.

IV. *Admission of Dr. Ross's Forensic Evaluation*

As explained previously, in October 2012, Dr. Robin Ross performed a forensic evalution of Thompson and diagnosed him with mild mental retardation with a full scale IQ of 62. Dr. Ross concluded that Thompson (1) had a mental defect, and (2) lacked the capacity to assist effectively in his own defense. Dr. Ross performed another evaluation of Thompson in January 2013, in reference to another criminal charge not at issue in this appeal, and concluded that while Thompson did have mild mental retardation with a full scale IQ of 62, he did not lack the capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. Dr. Ross also noted that her opinion of Thompson had changed since October 2012:

> I am not sure how to explain the difference in his test scores; however, I do know that someone cannot test smarter than they actually are, and it would be my opinion that his full effort was given today and that a better

13

assessment of his actual level of functioning concerning standing trial is seen in today's results and not the results in October of 2012.

At a motions hearing in May 2014, the State announced that Dr. Ross had moved to Arizona and would not be called as a material witness. Defense counsel stated his intention to file a motion to restrict any reference to Dr. Ross's reports, and the court told counsel to file a formal motion if he wished but "I think we have an understanding that no reference will be made to her examination or reports."

On 3 June 2014, Thompson filed a motion in limine asking that the January 2013 report be excluded because Dr. Ross would be unavailable for cross-examination but that Dr. Ross's October 2012 report be admitted into evidence because it was "crime specific" to CR-2012-709-1. Immediately before trial, the circuit court denied the motion and reiterated that "neither party shall mention or make reference to Dr. Ross's examination, reports, comments, [or] statements."

On appeal, Thompson contends that the court's denial of his motion in limine prevented him from offering evidence "in support of [his] statutorily plead [sic] defenses" and denied him a fair and impartial trial. First, Thompson has provided no convincing argument or citation to authority to explain why the October 2012 report should have been admitted when the January 2013 report was properly excluded. We do not consider arguments without convincing argument or citations to authority. *See MacKool v. State*, 2012 Ark. 287, 423 S.W.3d 28. Second, if Thompson wished to introduce the October 2012 report, he had to call Dr. Ross as a material witness in his own case-in-chief, which he did not do.

Circuit courts have broad discretion in the admission of evidence, and a circuit court's ruling on the admissibility of evidence will not be reversed absent an abuse of discretion. *See Vance v. State*, 2011 Ark. 392, 384 S.W.3d 515. Given these facts, we hold that Thompson has not established that the circuit court abused its discretion by not admitting Dr. Ross's October 2012 report.

## V. *Rape-Shield Statute*

On 9 June 2014, Thompson notified the State that he intended to call Jim Hill as a witness. According to Thompson, Hill would "confirm sexual activity" between K.W. and her boyfriend. The State responded that the evidence is inadmissible pursuant to Ark. Code Ann. § 16-42-101 (Repl. 1999). At an in-camera hearing held after the first day of the trial, Thompson argued that Hill, a friend of K.W.'s boyfriend, would testify that K.W. and her nineteen-year-old boyfriend were having sex. He argued that the testimony was relevant because both K.W. and her boyfriend denied having intercourse. Thompson's theory was essentially that K.W. had invented this story about Thompson assaulting her to explain to her mother why she was no longer a virgin.

The State first responded that the hearing was untimely and that there was no good cause for allowing it. It also argued that Thompson could not show that the alleged prior sexual conduct clearly occurred, that the alleged prior conduct did not closely resemble the alleged crime, that the alleged prior conduct was not relevant or necessary to Thompson's case, and that the prejudice of such evidence outweighed any probative value.

15

The court found that there was "real strong argument" that the motion to admit Hill's testimony was not timely, but the court ruled on it nonetheless. The court found that Hill's testimony had "very little, if any, independent relevance on the issues before the court" and that "the prejudicial effect of such evidence would clearly outweigh any remote probative value." So, Thompson was not permitted to present Hill's testimony at trial.

> Arkansas Code Annotated section 16-42-101(b) provides:
>
> In any criminal prosecution under § 5-14-101 et seq. or § 5-26-202 . . . opinion evidence, reputation evidence, or evidence of specific instances of the victim's prior sexual conduct with the defendant or any other person, evidence of a victim's prior allegations of sexual conduct with the defendant or any other person, which allegations the victim asserts to be true, or evidence offered by the defendant concerning prior allegations of sexual conduct by the victim with the defendant or any other person if the victim denies making the allegations is not admissible by the defendant, either through direct examination of any defense witness or through cross-examination of the victim or other prosecution witness, to attack the credibility of the victim, to prove consent or any other defense, or for any other purpose.

The purpose of the rape-shield statute is to shield victims of rape or sexual abuse from the humiliation of having their personal conduct, unrelated to the charges pending, paraded before the jury and the public when the conduct is irrelevant to the defendant's guilt. *Stewart v. State*, 2012 Ark. 349, 423 S.W.3d 69. A circuit court is vested with wide discretion in deciding whether evidence is relevant and admissible, and we will not overturn that decision absent clear error or a manifest abuse of discretion. *Id.*

On appeal, Thompson argues that Hill's testimony would have revealed a "lack of credibility and untruthfulness" in K.W.'s testimony and that, while inflammatory, its probative value outweighed any prejudice. He also argues that Ark. Code Ann. § 16-42-

16

SLIP OPINION

101 does not apply "to charges that are a violation of a minor." The State counters that Thompson's argument is not preserved because he failed to proffer Hill's testimony for the record, that Thompson failed to file the required written motion before trial, and that the circuit court correctly ruled that Hill's testimony was irrelevant and overly prejudicial.

As to Thompson's violation-of-a-minor point, the argument is based on the holding in *Donihoo v. State*, 325 Ark. 483, 931 S.W.2d 69 (1996), which did hold that the rape-shield statute does not apply to charges for violation of a minor. But Thompson was charged with rape, not violating a minor, and the rape-shield statute clearly applies to a rape charge. Setting aside any timeliness issue, on the rape-shield point, we disagree that Thompson failed to make a sufficient proffer of Hill's anticipated testimony. But that does not change the legal fact that the circuit court did not abuse its discretion by deciding that Hill could not testify given the proffered testimony. In *Gaines v. State*, the Arkansas Supreme Court stated that "virginity is not relevant per se in a rape case" and that "evidence of prior consensual sexual conduct is inadmissible unless such prior sexual conduct took place with the accused and, if admitted, the testimony is allowed only to show that consent may have been given." 313 Ark. 561, 567, 855 S.W.2d 956, 959 (1993). Having reviewed the record of the in-camera hearing, the case law, and the rape-shield statute itself, we hold that the circuit court did not abuse its discretion in deciding that Hill's anticipated testimony was either irrelevant or unduly prejudicial.

## VI. *Failure to Quash the Jury Panel*

Before jury selection on 11 July 2014, Thompson objected that there were not any black jurors in the jury pool. He stated that he was making an "extremely broad

SLIP OPINION

objection" under *Batson v. Kentucky*[1] and that "[w]e just need some black representation on that jury panel." The court replied that it was not, at that point, a *Batson* issue; that the jury panel "was drawn in strict compliance with the statutes relating to the selection and summonsing of veniremen"; and that Thompson's motion was denied. At the close of the State's case, Thompson renewed his objection, which the court again ruled was not a *Batson* issue and characterized it as an attempt to quash the jury panel, which the court noted was untimely but nonetheless was denied.

We will reverse a circuit court's denial of a motion to quash a jury panel only when there is a manifest abuse of discretion. *Kelly v. State*, 350 Ark. 238, 85 S.W.3d 893 (2002). Although selecting a petit jury from a representative cross-section of the community is an essential component of the Sixth Amendment right to a jury trial, nothing requires that the petit jury mirror the community and reflect the various distinctive groups in the population. *Danzie v. State*, 326 Ark. 34, 930 S.W.2d 310 (1996). To quash a jury panel based upon its racial make-up, the moving party must prove that people of a certain race were systematically excluded from the panel. *See Navarro v. State*, 371 Ark. 179, 264 S.W.3d 530 (2007). To establish a prima facie case of deliberate or systematic exclusion, a defendant must prove that: (1) the group alleged to be excluded is a "distinctive" group in the community; (2) the representation of this group in venires from which the juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) this underrepresentation is due to systematic exclusion of the group in the jury-selection process. *Thomas v. State*, 370 Ark.

---

[1] 476 U.S. 79 (1986). Under *Batson*, a prosecutor in a criminal case may not use peremptory strikes to exclude jurors solely on the basis of race.

SLIP OPINION

70, 257 S.W.3d 92 (2007). The defendant must prove systematic exclusion of members of his racial group from the venire; only after making a prima facie case by establishing these three elements does the burden shift to the State to justify its procedure. *Mitchell v. State*, 323 Ark. 116, 913 S.W.2d 264 (1996).

On appeal, Thompson argues that the circuit court erred in failing to remove the entire jury pool and that because there were no black jurors in the jury pool, a prima facie case is presented that racial discrimination has occurred. The State counters that Thompson only argued that there were no black jurors in the jury pool, which met the first factor listed above, but he failed to offer any proof on factors two and three—namely that representation of this group in the jury pool was not fair and reasonable in relation to the number of such persons in the community or that this underrepresentation was due to systematic exclusion of the group in the jury-selection process.

We find no abuse of discretion by the circuit court. Thompson has failed to provide any evidence of a prima facie case of racial discrimination, and the primary case he relies on, *Williams v. State*, 254 Ark. 799, 496 S.W.2d 395 (1973), is distinguishable. There, the jury commissioners simply went down the list of qualified electors of the county and selected a jury panel from among individuals with whom they were personally acquainted, and because the commissioners were not as widely acquainted with blacks as with whites in the involved area, the result was a disparity between the races in jury selection. Thus, our supreme court held that the jury which tried the defendant was not a legally constituted jury.

In this case, the court stated that the jury selection was done in strict compliance with the relevant statutes, which generally provide for a random-selection process. *See* Ark. Code Ann. § 16-32-103 (Supp. 2013). And Thompson has failed to challenge that selection process or its result with any evidence that the jury selected was not fair and reasonable in relation to the number of such persons in the community. The circuit court did not abuse its discretion in denying the motion to quash.

Affirmed.

VIRDEN and HIXSON, JJ., agree.

*Evans & Evans Law Firm*, by: *James E. Evans, Jr.*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Christian Harris*, Ass't Att'y Gen., for appellee.