SLIP OPINION

# SUPREME COURT OF ARKANSAS

**No.** CR–16–398

| | | |
|---|---|---|
| STATE OF ARKANSAS | | **Opinion Delivered:** February 23, 2017 |
| | APPELLANT | |
| | | |
| V. | | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT |
| | | [NOS. CR-2012-709-1; CR-2014-776-1] |
| MARIO D. THOMPSON | | |
| | APPELLEE | HONORABLE MARK LINDSAY, JUDGE |
| | | |
| | | <u>REVERSED AND DISMISSED</u>. |

**ROBIN F. WYNNE, Associate Justice**

The State of Arkansas appeals from a decision of the Washington County Circuit Court to grant a petition for postconviction relief alleging ineffective assistance of counsel filed by appellee Mario Thompson. The State makes the following arguments on appeal: (1) the circuit court clearly erred in ruling that trial counsel's decision not to introduce proof of a guardianship of appellee by his parents was deficient performance; (2) the circuit court erred in finding that appellee established prejudice with respect to the guardianship; (3) the circuit court's deficient-performance ruling with respect to certain decisions by trial counsel during the sentencing phase was clearly erroneous; and (4) as a matter of law, appellee cannot establish prejudice as to either of his sentences because he received less than the maximum sentence; alternatively, the circuit court's rulings regarding prejudice were clearly erroneous. Because the trial court's findings that appellee established prejudice from his trial counsel's allegedly deficient performance were clearly erroneous, we reverse and dismiss.

In May 2012, appellee was charged with two counts of sexual assault in the second degree for engaging in deviate sexual activity with a child under the age of fourteen on two separate occasions between 2007 and 2008. The investigation apparently began after appellee contacted the mother of one of the victims to apologize for having intercourse with her daughter. He filed a notice of intent to raise mental disease or defect as a defense. In a report dated October 26, 2012, Dr. Robin Ross concluded that appellee had a mental defect and lacked the capacity to assist in his defense. As a result, appellee was committed to the State Hospital pending restoration of his fitness to proceed. In November 2012, appellee's parents, Laverne Thompson and Ledell Thompson, filed a petition to be appointed as appellee's guardians. In support of their petition, they referenced Dr. Ross's evaluation of appellee. The petition was granted by the probate division of the Washington County Circuit Court and appellee's parents were appointed his permanent guardians.

Appellee was subsequently charged with rape of a second juvenile. Dr. Ross performed a second evaluation of appellee in January 2013 in connection with the rape charge. Following the second evaluation, Dr. Ross concluded that appellee was fit to proceed, had a mental defect, did not lack the capacity to appreciate the criminality of his conduct, and did not lack the capacity to conform his conduct to the requirements of the law. She explained the difference between her two evaluations of appellee as being the result of appellee giving better effort during the second evaluation, resulting in it better reflecting his actual level of functioning.

In July 2013, appellee was reevaluated by Dr. Michael Simon who concluded that, while appellee suffered from a mental defect, he was fit to proceed, he did not lack the

capacity to appreciate the criminality of his conduct, did not lack the capacity to conform his conduct to the requirements of the law, and did not lack the capacity to form the required culpable mental state. Dr. Richard Back performed an additional evaluation of appellee at the behest of appellee's trial counsel. Dr. Back concluded that appellee did not have the capacity to understand the proceedings against him, nor did he have the capacity to effectively assist his attorney on his behalf. Dr. Back also concluded that appellee had a mental defect, lacked the capacity for the culpable mental states required for the offenses charged, lacked the capacity to appreciate the criminality of his conduct, and lacked the capacity to conform his conduct to the requirements of the law. Following a hearing on appellee's competency to stand trial, the trial court found that appellee was competent.

Appellee was tried on the charges of second-degree sexual assault and rape before a Washington County jury. Prior to trial, appellee's counsel attempted unsuccessfully to be allowed to admit Dr. Ross's October 2012 report without also being required to admit her January 2013 report. At trial, appellee pursued a defense of lack of capacity due to mental disease or defect. Appellee's trial counsel did not introduce evidence of the guardianship obtained by appellee's parents during the trial. Dr. Ross's reports were not introduced; however, Dr. Back and Dr. Simon both testified. The jury convicted appellee on all counts.

During the sentencing phase, appellee's parents testified regarding appellee's intellectual disability as well as their fears of what would happen to him in prison. Trial counsel had been provided with a list of potential character witnesses for the sentencing phase that included a former principal, neighbors, and coworkers of appellee; however, he elected not to call any witnesses other than appellee's parents. During its deliberations on

sentence, the jury asked two questions of the trial court regarding (1) who was to determine whether the sentences imposed ran concurrently or consecutively and (2) how much time appellee would have to serve on each offense before becoming eligible for parole. Although a model jury instruction covered each question, the trial court, with the assent of the parties, answered the questions in plain language and did not read the instructions to the jury.

The jury recommended sentences of ten years on each count of second-degree sexual assault and twenty-five years on the count of rape. The jury did not give a recommendation regarding whether the sentences should run concurrently or consecutively. The trial court imposed the sentences recommended by the jury. The trial court ordered that the sentences on the two counts of sexual assault run concurrently and that those sentences run consecutively to the sentence imposed for the sole count of rape, for a total sentence of thirty-five years' imprisonment. Appellee appealed from his convictions to our court of appeals, which affirmed the convictions. *Thompson v. State*, 2015 Ark. App. 275, 461 S.W.3d 368.

Appellee subsequently filed original and amended petitions for postconviction relief pursuant to Arkansas Rule of Criminal Procedure 37.1 in which he claimed that his trial counsel provided ineffective assistance. Among the myriad claims of ineffective assistance of counsel contained in the petitions were claims that the performance of appellee's trial counsel was deficient because he (1) failed to introduce evidence of the guardianship during trial, (2) failed to call character witnesses during the sentencing phase, and (3) allowed the trial court to answer the jury's sentencing-phase queries in plain language instead of insisting that the applicable jury instructions be provided and failed to ensure that the jury received

Stage Two Verdict Form 9318-VF, wherein the jury makes a recommendation as to whether sentences on multiple offenses are to be served concurrently or consecutively. Appellee made corresponding claims that he was prejudiced by trial counsel's deficient performance.

At the hearing on the petitions, James E. Evans, Jr., appellee's trial counsel, testified that he did not insist on the jury instruction on consecutive-vs.-concurrent sentences because he was satisfied with the trial court's explanation to the jury. He also felt that the trial court's explanation regarding transfer eligibility was satisfactory. He was also concerned that the jury might not understand the instructions. Evans stated that he did not want Dr. Ross's second report to come in at trial because of the indication in that report that appellee did not give full effort during the first examination. There were also statements in the report indicating that appellee denied having committed the offenses, which Evans felt was inconsistent with a defense of mental defect. He testified that he was afraid Dr. Ross would "gut" the defense if she testified at trial. According to Evans, he did not introduce the guardianship at trial because he did not think it was relevant. He stated that he did not call additional character witnesses because he was concerned that it might be damaging to the mental-defect defense to have a group of people referencing things that appellee was capable of doing. He was also concerned about what might happen when the State confronted the witnesses with the acts appellee had just been convicted of committing.

Following the hearing, the trial court entered an order granting the original and amended petitions for postconviction relief. Relevant to the points on appeal, the trial court made the following findings: (1) there was no valid reason not to introduce the guardianship

at trial, and introducing the documents "could have significantly impacted the jury's opinion of [appellant's] diminished capacity"; (2) counsel was ineffective for failing to interview or call certain mitigation witnesses during the sentencing phase, and if he had done so "the outcome of the sentencing may well have been different"; and (3) counsel's failure to require that the jury be read the sentencing-phase instructions applicable to their queries to the trial court and ensure that the jury received form 9318-VF constituted ineffective assistance of counsel and that it was unable to say that counsel's failures did not affect the outcome of the sentencing phase. This appeal followed.

This case is properly before us because post-conviction proceedings under Arkansas Criminal Procedure Rule 37 are civil in nature, and therefore the State is entitled to appeal from an order granting post-conviction relief. *State v. Dillard*, 338 Ark. 571, 998 S.W.2d 750 (1999). We will not reverse the trial court's decision granting or denying post-conviction relief unless it is clearly erroneous. *Id*. A trial court's finding is clearly erroneous when, although there is evidence to support it, the appellate court after reviewing the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Dansby v. State*, 350 Ark. 60, 84 S.W.3d 857 (2002). In making a determination on a claim of ineffectiveness of counsel, the totality of the evidence before the fact-finder must be considered. *State v. Hardin*, 347 Ark. 62, 60 S.W.3d 397 (2001). The resolution of credibility issues is within the province of the trial court. *See Johnson v. State*, 321 Ark. 117, 900 S.W.2d 940 (1995).

Pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984), a convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death

SLIP OPINION

sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

The State first contends that the trial court erred in finding that counsel's decision not to introduce evidence of the guardianship constituted ineffective assistance of counsel and that appellee was prejudiced by counsel's decision. We agree with the State that the trial court clearly erred in finding that appellee was prejudiced by the decision not to introduce evidence of the guardianship. If anything, counsel's decision aided the defense. The contention in the guardianship petition that the guardianship was necessary was premised solely on the findings made by Dr. Ross following her initial evaluation of appellee. Appellee's Rule 37 petition and the trial court's findings neglect the fact that this was not Dr. Ross's only evaluation of appellee. The second evaluation, conducted three months later, resulted in Dr. Ross reaching completely different conclusions regarding appellee's competence and capacity. Dr. Ross could only explain the stark difference as being due to appellee not giving full effort during the first evaluation. Evans noted the potentially damaging nature of Dr. Ross's second report when he expressed concern that she would "gut" the defense if she testified at trial. He also attempted, unsuccessfully, to

persuade the trial court to allow him to introduce the first evaluation without being required to introduce the second.[1] The State correctly notes that introducing the guardianship petition and order at trial would have opened the door for the State to admit the second evaluation, a hazard Evans wisely avoided.

The Supreme Court of the United States has noted that, in determining whether a defendant is prejudiced by counsel's decision not to introduce certain evidence, it is necessary to consider all of the relevant evidence the jury would have had before it as a result of a decision to introduce the evidence, not solely the evidence the defendant claims was mistakenly kept out. *See Wong v. Belmontes*, 558 U.S. 15 (2009). Here, introducing the guardianship evidence would have all but required the State to introduce the second report. Appellee's entire defense at trial was that he did not know what he was doing when he committed the sexual assaults and the rape. Allowing before the jury evidence that appellee attempted to influence the outcome of a capacity evaluation would have completely obliterated appellee's defense. While appellee and the trial court note at length that counsel did not introduce the evidence because he did not believe it was relevant, the reasoning behind the decision is irrelevant when considering the issue of prejudice. Counsel's actions in declining to introduce evidence of the guardianship kept the State from introducing potentially devastating evidence in response. Therefore, the trial court clearly erred in finding that appellee was prejudiced by counsel's decision.

---

[1] We note that appellee did not assert in his petition that the failure to introduce Dr. Ross's initial evaluation into evidence at trial constituted ineffective assistance of counsel.

Next, the State argues that the trial court's findings that counsel provided ineffective assistance during the sentencing phase of the trial and that appellee was prejudiced by the deficient performance were clearly erroneous. We agree with the State that the findings of prejudice by the trial court were clearly erroneous. Sexual assault in the second degree is a Class B felony. Ark. Code Ann. § 5-14-125(b)(1) (Repl. 2013). The sentencing range for a Class B felony is not less than five years nor more than twenty years. Ark. Code Ann. § 5-4-401(a)(3) (Repl. 2013). On the counts of sexual assault in the second degree, appellee was sentenced to ten years' imprisonment, which is less than the maximum. Rape is a Class Y felony. Ark. Code Ann. § 5-14-103(c)(1) (Repl. 2013). The sentencing range for a Class Y felony is not less than ten years nor more than forty years. On the charge of rape, appellant was sentenced to twenty-five years' imprisonment, which is also less than the maximum.

We have held that a sentence less than the maximum sentence for an offense cannot show prejudice from the sentence itself. *State v. Smith*, 368 Ark. 620, 249 S.W.3d 119 (2007) (citing *State v. Franklin*, 351 Ark. 131, 89 S.W.3d 865 (2002)). As appellee was sentenced to less than the maximum on all charges, there must be something more than the sentence received in order for him to demonstrate prejudice. However, appellee has directed us to nothing else to indicate that he was prejudiced. Appellee contended in his petition and at the hearing that additional penalty-phase witnesses were necessary to humanize appellee and demonstrate, essentially, that he is a good guy who had made mistakes. Obviously, the jury felt some compassion for appellee, as it recommended sentences that were far below the maximum that could have been imposed. Both appellee and the trial court allude to the possibility that appellee could have been sentenced to either

a fine or probation if counsel had called additional witnesses during the penalty phase. With regard to the conviction for rape, that would not have been an option, as a sentence to a term of years of imprisonment is required following a conviction for that Y felony. Ark. Code Ann. §§ 5-4-301 and 5-4-104(c) (Supp. 2015). The trial court's conclusion that appellee was prejudiced by counsel's decision not to call additional witnesses during the penalty phase is clearly erroneous.

The failure to demand that the exact sentencing-phase instructions be read to the jury did not prejudice appellee, as there is no contention that the trial court's statements to the jury contained any inaccurate statements of the law. Whether appellee was prejudiced by counsel's failure to request that form 9318-VF be submitted to the jury is a somewhat closer question. Clearly, the issue of consecutive-vs-concurrent imposition of sentence was on the jury's mind, as it inquired about it to the trial court. The jury gave no recommendation, arguably because form 9318-VF was not submitted, and the jury had nowhere else on the sentencing forms to make a recommendation. As such, it is impossible to know what the jury would have recommended. However, the decision whether to run the sentences concurrently or consecutively rests firmly with the trial court. In this case, the trial court's statements during pronouncement of sentence indicate that appellee was not prejudiced by trial counsel's decisions regarding the sentencing-phase instructions and verdict forms. In stating that the sentences were to run consecutively, the trial court said,

> Mr. Thompson, this is another situation, a very troubling situation that I see all too often. I understand you have some limitation, that was made clear during the trial, but the limitation described by the psychologists, in my judgment is absolutely no excuse for the terrible things you did to those children. You, in many respects, were in a position of trust and authority and you abused that position, and you took advantage of these children. And you, at some point in the future will get out of

prison but I'm doubtful that these children will ever fully recover from the terrible things that you did to them. And that's the real tragedy of this case. They'll probably never, ever get over it. So you need to think about that.

Given the trial court's statements and the fact that the trial court would not have been bound by any sentencing recommendation from the jury, appellee has not demonstrated that, had counsel ensured that form 9318-VF was given to the jury and, had the jury recommended that the sentences for rape and sexual assault in the second degree be served concurrently, the trial court would have ordered the sentences to be served in that manner. As such, the trial court's finding of prejudice is clearly erroneous.

Reversed and dismissed.

HART, J., dissents.

**JOSEPHINE LINKER HART, Justice, dissenting.** The majority commits two errors. First, the majority fails to give due consideration to the circuit court's finding that Mario D. Thompson suffered prejudice as a result of trial counsel's errors during the sentencing phase of his trial. Second, the majority applies an impossible standard for a defendant to meet to establish that he has suffered prejudice. I respectfully dissent.

First, the absence of a record of jury deliberations makes it is impossible to determine what factors went into the jury's determination of a defendant's sentence. In postconviction proceedings, the circuit court evaluates the resulting prejudice from trial counsel's errors during sentencing. We will not reverse the trial court's decision granting or denying postconviction relief unless it is clearly erroneous. *State v. Dillard*, 338 Ark. 571, 575, 998 S.W.2d 750, 753 (1999). Here, the circuit court, sitting as finder of fact, concluded that prejudice resulted from the sentencing errors. In holding that the circuit court's decision

regarding prejudice was clearly erroneous, the majority has examined the issue from the perspective of an appellate court that is considering a defendant's appeal from the denial of postconviction relief. This case, however, is an appeal by the State from the circuit court's decision to *grant* postconviction relief. We should afford deference to the circuit court's findings and ask if it cannot be said that the circuit court clearly erred in finding prejudice. *Id.* at 580, 998 S.W.2d at 755 (stating "we cannot say that the trial court clearly erred in concluding that Dillard's trial was prejudiced by counsel's errors"). In other words, it cannot be said that Thompson did not suffer any prejudice from trial counsel's errors during sentencing. The circuit court found that Thompson suffered prejudice, and that decision was not clearly erroneous.

Second, the majority applies a prejudice standard that precludes a defendant from establishing prejudice from the sentence itself if the defendant receives a discretionary sentence of less than the maximum. Again, without knowing what the jury considered, this standard is virtually impossible to meet. We have never explained our reason for adopting the draconian standard. As one commentator has noted, "The only plausible explanation for these heightened standards is to help dispose of (i.e., deny) many ineffective assistance claims." Carissa Byrne Hessick, *Ineffective Assistance at Sentencing*, 50 B.C. L. Rev. 1069, 1091 (2009) (discussing Arkansas's heightened prejudice standard). The United States Supreme Court has noted that its "jurisprudence suggests that any amount of actual jail time has Sixth Amendment significance." *Glover v. United States*, 531 U.S. 198, 203 (2001). Thus, our prejudice standard is in clear tension with *Glover*. Hessick, *supra* at 1091. Certainly, "nothing in *Glover* suggests that a non-capital defendant must receive the maximum available sentence

in order to demonstrate prejudice." Hessick, *supra* at 1093. It is time to reexamine our reliance on this impossible prejudice standard.

*Leslie Rutledge*, Att'y Gen., by:  *Christian Harris*, Ass't Att'y Gen., for appellant.

*Ernie Witt*, for appellee.