

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR-16-762

|  |  |
|---|---|
| GEORGE WESLEY BATES, JR.<br>APPELLANT<br><br>V.<br><br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered** March 1, 2017<br><br>APPEAL FROM THE POINSETT<br>COUNTY CIRCUIT COURT<br>[NO. 56CR-16-92]<br><br>HONORABLE JOHN N. FOGLEMAN,<br>JUDGE<br><br>AFFIRMED |

## LARRY D. VAUGHT, Judge

Appellant George Bates appeals his conviction by the Circuit Court of Poinsett County of domestic battering in the third degree. We affirm.

At the bench trial, the victim, Karen Goans, testified that she had lived with Bates for eleven years prior to an incident in January 2016 that resulted in her hospitalization. However, she denied that the hospitalization was due to injuries inflicted by Bates, stating instead that she had "messed up on [her] pills" and awakened in the hospital. She denied having suffered any head trauma but admitted that she had "a hole in [her] lung." She testified that, for the past three months, she had lived with her mother in Cherry Valley but now lives on her own in Wynne.

Karen's adult daughter, Jamie Lewis, testified that Bates was her mother's "ex-boyfriend or current boyfriend." Jamie testified that, in January 2016, her mother was in the hospital in a coma for four days. Jamie stated that she and other family members walked in to

SLIP OPINION

her mother's hospital room as her mother woke up from the coma. She testified that when Karen's mother went to Karen's bedside, Karen began to cry. At that point, the testimony drew a hearsay objection, to which the State argued that the testimony it was about to elicit qualified as an excited utterance or present-sense-impression exception to the hearsay rule.

The court said it needed to hear more to decide the issue and allowed the State to continue with its line of questioning. Jamie testified that she and four other people were there as her mother began regaining her consciousness and started to cry. They all went to her bedside to hug her, and Karen said to her mother "He did this to me, he did this to me." Jamie then testified, "[A]nd when we said, 'Who?' She said, 'George Bates. George did this to me. He beat me. He put me here, momma, he did this.'" She stated that they then went to the nurse's desk and asked that Bates not be allowed to see Karen. Bates's attorney again objected that the statement was inadmissible hearsay. He argued that it didn't qualify as an exception to the hearsay rule because it was made days after the alleged beating. After a brief exchange regarding the law related to the excited-utterance exception, the court permitted Bates's attorney to voir dire the witness. During voir dire and follow-up questioning, Jamie testified inconsistently about how long her mother had been awake before she spoke, what exactly she said, and whether it was in response to questioning. Ultimately, the court admitted Jamie's initial testimony ("He did this to me, he did this to me." "Who?" "George did this to me.") as an excited utterance but excluded the remainder of Jamie's testimony regarding her mother's description of how Bates had caused her injuries.

Detective Joey Martin of the Poinsett County Sheriff's Department testified that he had responded to a call at St. Bernard's Hospital and investigated Karen's injuries. He was

SLIP OPINION

unclear of the date she was admitted but said he arrived to investigate on January 5, 2016. He spoke to Jamie Lewis as part of his investigation, although the court ruled that any of Jamie's statements to the detective were inadmissible hearsay and could not be introduced to establish the truth of the matter asserted. The court allowed Detective Martin to testify to Jamie's statement but ruled that the testimony would be considered only to explain the detective's steps in investigating.

Detective Martin offered a recording of Karen's statement given at the hospital regarding the cause of her injuries. Following a hearsay objection, the State argued that it should be admitted for the limited purpose of impeaching Karen's testimony, which the court allowed. In the recording, Karen told Detective Martin that Bates had pushed her off the porch, causing her to hit her head. Detective Martin testified that when he met Karen in the hospital, she was in a significant amount of pain, had trouble breathing, and was hooked up to an IV.

Bates made a motion for directed verdict, arguing that the evidence was insufficient to support a conviction and that the court erred in admitting the part of Karen's statement in which she identified Bates by name. The State responded, in part, by reciting Karen's statements that Bates had pushed her off the porch and kicked her. The court noted that it had excluded that testimony for purposes other than impeachment. However, the court denied the motion for directed verdict, stating that it had properly admitted the initial excited-utterance exchange, including the identification of Bates, and that the evidence was sufficient to go forward. The defense then rested and renewed its motion. This time the defense also argued that the State had failed to establish that Poinsett County had jurisdiction over the case.

The court again denied the motion. When the jurisdiction issue was raised again in closing arguments, the court reviewed the record and the case law, and ruled that it had jurisdiction to hear the case because the defense had not presented any affirmative evidence that the crime had been committed elsewhere.

The court found Bates guilty of domestic battering in the third degree[1] and sentenced him to six months in the county jail followed by six months' suspended imposition of sentence (SIS). During the SIS, Bates was ordered to have no contact with Karen and to attend anger-management classes. This timely appeal followed.

Bates's first point on appeal is a challenge to the sufficiency of the evidence. In reviewing a challenge to the sufficiency of the evidence in a criminal bench trial, this court determines whether the verdict is supported by substantial evidence, direct or circumstantial. *Stevenson v. State*, 2013 Ark. 100, 426 S.W.3d 416. Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.*, 426 S.W.3d 416. This court views the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. *Id.*, 426 S.W.3d 416.

A person commits domestic battering in the third degree if, with the purpose of causing physical injury to a family or household member, the person causes physical injury to a family or household member. Ark. Code Ann. § 5-26-305(a)(1) (Supp. 2015). Domestic battering in the third degree is a Class A misdemeanor. Ark. Code Ann. § 5-26-305(b)(1). Physical injury is defined as impairment of the victim's physical condition, infliction of substantial pain, or

---

[1]Bates was initially charged with domestic battering in the second degree, but the court reduced it to the lesser-included offense of third-degree domestic battering.

infliction of bruising, swelling, or a visible mark associated with physical trauma. Ark. Code Ann. § 5-1-102(14)(A)–(C).

In this case, there was sufficient evidence of each element. Karen and Bates had lived together for approximately eleven years, making Karen a "household member" under the statute. Karen was injured to the point of being in a coma for several days. Although the court was not presented with specific medical evidence as to her injures, the testimony revealed that they were severe enough to require hospitalization. Detective Martin testified that Karen was in a significant amount of pain when he spoke with her in the hospital and that she was having trouble breathing. Finally, the court admitted Jamie's testimony that Karen identified Bates as the person who had caused her injuries.[2] The court's verdict convicting Bates of third-degree domestic battering was therefore supported by substantial evidence.

Bates's second argument is that the court lacked jurisdiction because there was insufficient evidence that the events in question took place in Poinsett County.[3] However, the Arkansas Supreme Court held in *Dix v. State*, 290 Ark. 28, 32, 715 S.W.2d 879, 881 (1986), that "[t]he State need not prove jurisdiction, . . . unless evidence is admitted that affirmatively shows that the court lacks jurisdiction." "Before the State is called upon to offer any evidence

---

[2]Although Bates contends on appeal that this testimony was erroneously admitted as an excited utterance, in reviewing sufficiency we consider all evidence, whether it was admitted correctly or erroneously. *Boyd v. State*, 2016 Ark. App. 407, at 8, 500 S.W.3d 772, 778 (citing *Eichelberger v. State*, 323 Ark. 551, 916 S.W.2d 109 (1996)).

[3]We note that, while Bates's argument may more accurately be understood as a challenge to venue rather than jurisdiction, the analysis is the same. In *Lewis v. State*, 2016 Ark. App. 257, 492 S.W.3d 538, we treated an identical argument as one challenging both jurisdiction and venue and relied on Ark. Code Ann. § 5-1-111(b) in holding that the State "is not required to prove jurisdiction or venue unless evidence is admitted that affirmatively shows that the court lacks jurisdiction or venue." *Lewis*, 2016 Ark. App. 257, at 2, 492 S.W.3d at 540.

SLIP OPINION

on the question of jurisdiction, there must be positive evidence that the offense occurred outside the jurisdiction of the court." *Id.* at 32, 715 S.W.2d at 881. Moreover, our supreme court has noted that "§ 5-1-111(b) created a presumption in favor of jurisdiction in the place where the charge is filed by the State." *Cates v. State*, 329 Ark. 585, 589, 952 S.W.2d 135, 137 (1997) (citing *Higgins v. State*, 317 Ark. 555, 558, 879 S.W.2d 424, 425 (1994)). There is no requirement that the State offer proof of jurisdiction unless there has been a showing of positive evidence that the offense occurred outside the court's jurisdiction. *Smith v. State*, 367 Ark. 274, 284, 239 S.W.3d 494, 502 (2006) (citing *Findley v. State*, 307 Ark. 53, 818 S.W.2d 242 (1991)); *DeWitt v. State*, 306 Ark. 559, 561, 815 S.W.2d 942, 943–44 (1991). Positive evidence consists of something allowing the fact-finder to identify, based on the record, where the crime occurred. *Dix*, 290 Ark. at 32, 715 S.W.2d at 881. Here, although Bates called jurisdiction into question, he never presented the trial court with any affirmative evidence that the crime took place outside Poinsett County. This case is directly controlled by *Dix*; therefore, we affirm on this point.

Bates's final point on appeal is that the court erred in admitting into evidence Jamie's testimony that, on awakening from a coma, Karen identified Bates as the person who had caused her injuries. Bates argues that the statement should not qualify as an excited utterance because it was too remote in time from the event in question and that the portion of the statement naming Bates had been made in response to a question. Matters pertaining to the admissibility of evidence are left to the sound discretion of the trial court, and this court will not reverse absent an abuse of discretion. *See Washington v. State*, 2010 Ark. App. 596, at 8, 377 S.W.3d 518, 522.

Although hearsay is generally not admissible pursuant to Rule 802 of the Arkansas Rules of Evidence (2016), "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is admissible as an excited utterance under Rule 803(2). Whether a declarant makes statements in response to questions is not dispositive of whether they are the product of the exciting event. *Lewis v. State*, 74 Ark. App. 61, 66, 48 S.W.3d 535, 538 (2001). The relevant inquiry is whether the statement was made under the stress of excitement or was made after the declarant calmed down and had an opportunity to reflect, which is a matter within the circuit court's sound discretion. *Fudge v. State*, 341 Ark. 759, 769, 20 S.W.3d 315, 320 (2000). Admissibility is not to be measured by any precise number of minutes, hours, or days, but requires that the declarant is still under the stress and excitement caused by the event. *Pennington v. State*, 24 Ark. App. 70, 74, 749 S.W.2d 680, 682 (1988).

It is clear from the record before us that the circuit court did not abuse its discretion in admitting a small portion of Jamie's testimony as an excited utterance. The court carefully considered the circumstances surrounding the statement, including the facts that Karen made the statement immediately upon regaining consciousness after the attack, made it while crying and while in physical pain from her injuries, and initially volunteered the information without prompting.[4] To the extent that Bates argues that Jamie's testimony regarding her mother's statements was inconsistent, we note that the court, as the trier of fact in a bench trial, is free to believe all or part of a witness's testimony and may resolve questions of conflicting

---

[4]Although Karen's family asked her to clarify to whom she was referring in her statement that "he did this to me," we affirm the circuit court's finding that the entire exchange was an excited utterance.

testimony and inconsistent evidence. *Lowe v. State*, 2016 Ark. App. 389, at 3, 500 S.W.3d 176, 178. Further, the court excluded much of Jamie's testimony about what her mother said after the initial outburst, admitting only the portion of her statements that qualified under Rule 803. We affirm.

Affirmed.

WHITEAKER and MURPHY, JJ., agree.

*Chet Dunlap*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Ashley Priest*, Ass't Att'y Gen., for appellee.