

# ARKANSAS COURT OF APPEALS
## DIVISION III
### No. CR–16–1039

TRENTON LAMONT JEFFERSON
                              APPELLANT

V.

STATE OF ARKANSAS
                                 APPELLEE

**Opinion Delivered:** October 4, 2017

APPEAL FROM THE FAULKNER
COUNTY CIRCUIT COURT
[NO. 23CR-15-491]

HONORABLE CHARLES E.
CLAWSON, JR., JUDGE

AFFIRMED

## RITA W. GRUBER, Chief Judge

On June 20, 2015, the Conway Police Department responded to a 911 call about domestic violence in the apartment where Jolanda Young lived with her son and daughter, five-year-old TY and eight-year-old SY. The officers observed damage to the apartment's front door; multiple marks and "whelps" on TY; and blood on Jolanda's t-shirt from a small cut on his thumb. The children's biological father, Trenton Lamont Jefferson, was initially charged with residential burglary and second-degree domestic battering. An amended information added a sentence enhancement for committing the domestic battering in the presence of a child.

Jefferson was convicted by a jury and was sentenced to serve a total of 216 months in the Arkansas Department of Correction: 60 months for residential burglary and 120 months for domestic battering, to be served consecutively, with a 36-month enhancement for committing domestic battering in the presence of a child. Jefferson appeals, contending

that (1) his convictions were not supported by substantial evidence, (2) the circuit court erred in denying his motion for new trial, (3) the circuit court abused its discretion in admitting certain testimony under the excited-utterance exception to the hearsay rule, and (4) the circuit court erred in restricting his attempts "to explain the black perspective to white jurors" during closing argument. We affirm.

## I. *Sufficiency of the Evidence*

Jefferson moved for a directed verdict at the close of the State's case-in-chief. He contended that the State's evidence was insufficient to prove residential burglary or second-degree domestic battering and insufficient to prove that the domestic battering had been committed in the presence of a child. The circuit court denied the motion. Jefferson rested without presenting a case for the defense in the guilt phase of the trial. He renewed his directed-verdict motion, which the court again denied.

Jefferson repeats the arguments that he made at trial, again challenging the sufficiency of the evidence for his convictions and sentence enhancement. First, he contends that there was insufficient evidence of residential burglary because there was no substantial evidence that he unlawfully entered or remained in Jolanda's apartment. Second, he contends that there was insufficient evidence of domestic battering because there was no substantial evidence that his acts fell outside the realm of reasonable parental corporal punishment. Third, he contends that there was insufficient evidence of committing domestic battering in the presence of a child because there was no substantial evidence that SY was physically present or that Jefferson was aware that she may have been able to hear or see the battering.

SLIP OPINION

A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Lewis v. State*, 2016 Ark. App. 257, at 2, 492 S.W.3d 538, 540. When the sufficiency of the evidence is challenged on appeal, we will view the evidence in the light most favorable to the verdict and will consider only the evidence supporting the verdict. *Id.* Moreover, it is the function of the jury, not the reviewing court, to evaluate the credibility of witnesses and to resolve any inconsistencies in the evidence. *Beaver v. State*, 2014 Ark. App. 188, at 2. When doing so, the jury is entitled to draw any reasonable inference from the evidence and is not required to abandon common sense. *Bridges v. State*, 46 Ark. App. 198, 202, 878 S.W.2d 781, 784 (1994). The verdict will be affirmed if it is supported by substantial evidence, which is evidence forceful enough to compel a conclusion without resorting to suspicion or conjecture. *Lewis*, *supra*.

Under these standards, we review the evidence presented at trial. The State's case included the testimony of Hayden Schmidt, David Short, and Lois Spencer—all personnel of the Conway Police Department; Jolanda Young; her father, Morgan Young; and Dolan Ellis, Jolanda's next-door-apartment neighbor.

Ellis testified that he and his wife heard sounds of a loud bang, adults and a child yelling, and whipping; the sounds were coming from his neighbor's adjacent apartment, the "room in the back . . . directly next to ours across the wall." He described what he heard as a five- to ten-minute "beating." He testified that he called 911 when he heard a woman say, "You're going to kill him." He testified that he and his wife went to the front after hearing a knock at the neighbor's door, and they saw that it was his neighbor's father (Morgan Young) who had knocked. Ellis testified that a man who appeared to be

"extremely angry" came out of the apartment holding a belt and almost started fighting with Morgan. According to Ellis, the two men were "right in each other's faces," and Morgan told the other man, "You need to pick on somebody your own size." Morgan then threatened to call the police, and Ellis told them that he had already called. At that point, the man with the belt got in his car—which "was parked right outside of the apartment not even in a space"—and drove off.

Officer Hayden Schmidt arrived at the residence four minutes after he had received the 911 call from dispatch. Schmidt described the apartment's damaged door as having been forced open, evidenced by splinters of wood and pieces of the doorframe on the ground.[1] Schmidt testified that just inside the front door was a trembling young female, SY, "standing with her shoulders hunched over and her head down" and with tears running down her face. Schmidt testified that in a bathroom down the apartment's hallway he found Jolanda coddling and holding her son. She "was squatted down . . . on his level." TY "obviously was distraught," was crying, and was not wearing any underpants. Schmidt testified that TY had visible one- to two-inch lashings and overlapping, raised red welts randomly wrapping around his body from the middle of his shoulder blades, across his torso, and "down his backside wrapping around his legs in the front of his body and going down to his calves."[2] A small cut on his finger had bled onto his mother's shirt.

Jolanda testified that she had been subpoenaed to appear in court and was testifying against her wishes. She testified that she was the primary disciplinarian but that on June 20

---

[1]Pictures of the broken door and framing were admitted without objection.

[2]Photographs of the extent of the injuries were introduced without objection.

Jefferson had her permission to come to her home and discipline TY—who had talked back and cussed at the barber shop earlier in the day. She denied having told responding officers that Jefferson began beating on the door when he arrived and that he became enraged when she would not let him in. However, she admitted that her door had not been damaged before then, that Jefferson caused the marks on their son by "spanking" him with a belt, that TY's thumb had not been bleeding before Jefferson arrived, and that the photographs introduced into evidence accurately reflected what TY's injuries looked like after Jefferson had left. She admitted that—although she made no physical attempt to stop Jefferson from hitting TY—she verbally asked Jefferson to stop and asked her father to come to her home to "check things out." She opined that the damage to the door must have occurred because the doorstop was jammed when Jefferson tried to open the door, and she said that SY was in her room when Jefferson came and while TY got spanked.

Morgan Young testified that, like his daughter Jolanda, he had been subpoenaed to testify. He confirmed that he went to the apartment at her request and, upon arriving, told Jefferson that he needed to leave. Morgan confirmed that TY was upset and visibly bruised. Although admitting that he and Jefferson had "a few words," Morgan denied saying that he would call the police and could not remember telling Jefferson to pick on someone his own size.

Detective David Short investigated the scene at the apartment and photographed TY's injuries. He testified that upon arriving, he immediately noticed that the front door had been damaged and that Jolanda was visibly upset—anxious, shaking, nervous, and crying. He rejected any suggestion that the door could have been damaged through use of

5

the doorstop, explaining that the deadbolt apparently had been latched and that "the only way" that the door's facing could have been torn away was "by that deadbolt being forced through it."

Officer Lois Spencer testified similarly to the other officers that, upon her arrival, the damage to the door was very evident. She testified that upon entering the apartment, she spoke with SY—who was shaking and crying, and who responded that she was not okay when asked. Spencer testified that she occupied TY by coloring with him while they waited for detectives to arrive. She observed that he was holding his right arm and ribs—which she interpreted as evidence of tenderness—and that he had visible red marks and a cut on his finger.

### A. Residential Burglary and Second-Degree Domestic Battering

To prove residential burglary, the State must show that a defendant entered or remained unlawfully in the residence of another person with the purpose of committing an offense punishable by imprisonment while inside the residence. Ark. Code Ann. § 5-39-201(a)(1) (Repl. 2013). "To enter or remain unlawfully" means "to enter or remain in or upon premises when not licensed or privileged to enter or remain in or upon the premises." Ark. Code Ann. § 5-39-101(2)(A). Purpose can be established by circumstantial evidence, which often is the only evidence available to show intent. *Holland v. State*, 2017 Ark. App. 49, at 5, 510 S.W.3d 311, 314. The circumstances must be such that the requisite purpose of the accused can reasonably be inferred, and the evidence must be consistent with his or her guilt and inconsistent with any other reasonable conclusion. *Id.*

Domestic battering in the second degree occurs when a person knowingly causes physical injury to a family or household member the person knows to be twelve or younger. Ark. Code Ann. § 5-26-304(a)(4). A person acts knowingly with respect to a result of his or her conduct when he or she is aware that it is practically certain that his or her conduct will cause such a result. Ark. Code Ann. § 5-2-202(2) (Repl. 2013). "Physical injury" is defined in part as the infliction of substantial pain or inflicting bruising, swelling, or a visible mark associated with physical trauma. Ark. Code Ann. § 5-1-102(14)(B) & (C) (Repl. 2013).

Jefferson first contends that there is insufficient evidence of residential burglary. He argues that the evidence showed he entered and remained lawfully inside the home with the purpose of inflicting reasonable physical discipline on his son. Jefferson cites Jolanda's testimony that he had an open invitation to the apartment, had permission to be there that day, and had permission to discipline their son for his behavior at the barbershop. Jefferson also refers to Ellis's testimony that Jefferson yelled to TY while the discipline occurred, "You're too young to be lying to me, boy." He asserts that the fact that he damaged the door, while perhaps indicating his strength or demeanor, should not go to determining whether his entry was lawful or unlawful. He argues that even if his conduct rose to the level of domestic battering, the evidence did not exclude the possibility that his purpose was to inflict reasonable physical discipline on his son. We disagree.

Each responding officer remarked on the extent of the damage to the door and doorframe. Detective Short explained that the damage likely occurred from the door being kicked in while the deadbolt was engaged, and Ellis testified that he and his wife heard a

7

loud "bang" at the door. Jolanda testified that the door was not damaged previously, that she asked Jefferson to stop disciplining TY, and that she asked her father to come "check things out." The jury was free to reject her testimony that Jefferson had permission to be there. We hold that there was substantial evidence to support the jury's finding of unlawful entry.

Jefferson also contends that there is insufficient evidence of second-degree domestic battering because the State introduced no substantial evidence of a parent's unreasonable use of physical force in disciplining a misbehaving child. He recites from the Bible, *Proverbs* 13:24 (King James), "He that spareth his rod hateth his son; but he that loveth him chasteneth him betimes," and notes our statutory provision of justifiable physical force:

> (a) The use upon another person of physical force that would otherwise constitute an offense is justifiable under any of the following circumstances:
>
> (1) A parent, teacher, guardian, or other person entrusted with care and supervision of a minor or an incompetent person may use reasonable and appropriate physical force upon the minor or incompetent person when and to the extent reasonably necessary to maintain discipline or to promote the welfare of the minor or incompetent person[.]

Ark. Code Ann. § 5-2-605(a)(1) (Repl. 2013).

Jefferson discusses cases in which reasonable corporal punishment by parents and teachers in the discipline of misbehaving children is condoned. *See Ackers v. State*, 73 Ark. 262, 83 S.W. 909, 909 (1904) (reversing conviction for murder and remanding where manslaughter instruction had not been given for defendant father, who "in the prosecution of a lawful act, done without due caution and . . . malice, or intent to kill," killed his daughter by whipping her more severely than he intended and more forcefully than he should); *Dodd v. State*, 94 Ark. 297, 126 S.W. 834, 835 (1910) (finding "no evidence that

punishment administered for failure to obey was excessive" and "nothing to show that the teacher was actuated by any personal animosity toward the pupil"); *Ark. Dep't of Human Servs. v. Parker*, 88 Ark. App. 222, 229, 197 S.W.3d 33, 37 (2004) (holding that three average "licks" administered by a paddle, which resulted in bruising on the buttocks, did not warrant placing a school official on the child-abuse registry); *Ark. Dep't of Human Servs. v. Holman*, 96 Ark. App. 243, 240 S.W.3d 618 (2006) (holding that the evidence was insufficient to support a finding that an assistant school principal committed child maltreatment when she caused bruises on child while disciplining him with a paddle). Jefferson likens his case to *Sykes v. State*, 57 Ark. App. 5, 940 S.W.2d 888 (1997), in which we reversed a grandmother's second-degree-battery conviction where evidence of physical injury from spanking an eleven–year-old grandchild consisted of a few marks from a telephone cord and no evidence of bruising or bleeding.

We reject Jefferson's arguments that his conduct was justifiable and that there was no substantial evidence that his use of force was unreasonable. We agree with the State that *Sykes* is not controlling because the statutory definition of "physical injury" at the time of the case was impairment of physical condition or the infliction of substantial pain. Ark. Code Ann. § 5-1-102(14) (Repl. 1993). The definition was expanded by Act 1476 of 1999 to include the infliction of "bruising, swelling, or a visible mark associated with physical trauma." Ark. Code Ann. § 5-1-102(14).

Moreover, there was testimony that neighbors heard sounds of a "bang" and of yelling by a child and adults; that Jefferson parked his car right outside the apartment—but not in a marked space—when he arrived to administer discipline to TY; and that he beat

the five-year-old child with a leather belt repeatedly for at least five minutes, causing welts and lashings across his shoulders, torso, and legs. The jury was free to disregard Jolanda's attempt at trial to diminish her statements to police when they arrived that Jefferson beat on her door and became enraged when she would not let him in. Thus, the jury was free to conclude that Jefferson arrived with intent to do harm and that the physical force he used in administering discipline to his five-year-old son was beyond the extent reasonably necessary to maintain discipline. The officers' trial testimony and photographic evidence were substantial evidence of "visible marks associated with physical trauma" from which the jury could conclude that TY suffered physical injury. In sum, there was substantial evidence to support the jury's conclusion that Jefferson committed the offense of domestic battering in the second degree.

B.      Committing Second-Degree Domestic Battering in the Presence of a Child

A person who commits a felony offense involving domestic battering or assault on a family member or household member may be subject to an enhanced sentence of an additional term of imprisonment of not less than one year and not greater than ten years "if the offense is committed in the presence of a child." Ark. Code Ann. § 5-4-702(a) (Repl. 2013). The enhanced portion of the sentence is consecutive to any other sentence imposed. Ark. Code Ann. § 5-4-702(d).

Jefferson challenges the sufficiency of the evidence for this enhancement, arguing that there was no proof that SY was present while TY was being spanked or proof that she had knowledge of it. He points to Jolanda's testimony that SY was in the back of the apartment the entire time. Again, the jury was free to disregard this testimony. Instead, the

jury could consider evidence that SY was tearful and shaken when responding officers arrived minutes after the 911 call and that she indicated that she was "not okay." The jury was free to conclude that SY, just like the neighbors, had heard the sounds of her brother being beaten and her mother pleading. The jury was also free to conclude that Jefferson knew or had reason to know that SY lived in the home with her brother and would be there. Accordingly, we hold that substantial evidence supports the jury's finding that the domestic battering was committed in the presence of a child.

## II. *Motion for New Trial*

Jefferson contends in his second point that the circuit court erred in denying his motion for new trial based on ineffective assistance of counsel at the sentencing phase. On review, we assess the effectiveness of counsel under the two-prong standard of *Strickland v. Washington*, 466 U.S. 668 (1984), whereby a petitioner must demonstrate that counsel made errors so serious that the outcome of the trial was prejudiced. *Sartin v. State*, 2012 Ark. 155, at 2–3, 400 S.W.3d 694, 697–98. The reviewing court indulges in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. The defendant claiming ineffective assistance of counsel has the burden of overcoming this presumption by identifying the acts and omissions of counsel which, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment. *Id*. To satisfy the prejudice part of the test, the petitioner must show that counsel's deficient performance prejudiced the defense such that there is a reasonable probability that the trial's outcome would have been different absent counsel's errors. *Id*.

A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.*

Following entry of the judgment, Jefferson obtained new counsel and timely moved for a new sentencing trial. The circuit court conducted a hearing on his motion on August 22, 2016. Jefferson himself testified, as did his mother, Vanya Jefferson; his older brother, Travis Jones; a first cousin and business partner, Sade Long; and Jolanda Young.

The circuit court denied the new-trial motion by letter order file-marked on August 23, 2016. The letter included the following:

> It is the court's finding that testimony presented and exhibits introduced into evidence reflect that there was nothing offered by the defendant in the course of the hearing that was substantially different from testimony which came in either through the defendant or the witness, Ms. Young in the sentencing phase of the trial. It is also clear from the testimony that all those who testified were available, were aware of the trial, and made no effort to communicate any interest they had in participating to counsel for the defendant. The attorney called witnesses who provided information from which the jury could make a determination of the appropriate sentence. In fact the sentences returned were substantially below the maximum available for all offenses which the defendant was convicted.

> The Court concludes that trial counsel for the defendant acted in an appropriate manner, well within the requirements expected of trial counsel in a criminal case. Decisions regarding the nature of the testimony and the witness who presented it were matters of trial strategy and preparation which the attorney made at the time of trial.

Jefferson argues on appeal that the ruling was clearly erroneous given trial counsel's utter failure to conduct a sentencing investigation or present any mitigating evidence at sentencing. He argues that he was the only witness to testify at his sentencing hearing, that his trial counsel asked him only generalized and broad questions, and that counsel's complete failure to conduct a sentencing investigation can never constitute reasonable strategy in a criminal case. He asserts that this deficiency resulted in his receiving greater sentences for

the convictions and sentencing enhancement than he otherwise would have received. He cites *Wiggins v. Smith*, 539 U.S. 510 (2003); *Strickland*, *supra*; and *Sanford v. State*, 342 Ark. 22, 25 S.W.3d 414 (2000), for the proposition that his trial counsel had an absolute duty to fully investigate all possible mitigating circumstances.

Jefferson asserts that each of his witnesses at the hearing on his new-trial motion testified to mitigation evidence that should have been available to the jury at the sentencing phase. He relies on the following testimony. His mother said that he "never had a father" growing up, Jefferson always craved his father's attention, and his father was a poor influence on him and his siblings; that her son is a good father to his children—very involved in their school and extracurricular functions, and financially supports them without being compelled to do so; that she disciplined him and his siblings when they were kids, using belts and switches; and that she never spoke with his trial counsel, nor did counsel's office ever reach out to her. Jefferson's brother testified that he had no contact with trial counsel until counsel's assistant called him to attend the penalty phase in the late afternoon of the trial itself and that no one discussed with him the concept of mitigation or the possibility of testifying on Jefferson's behalf. The brother stated that he would have testified at trial about Jefferson as an outstanding father and uncle, and about Jefferson's involvement with the Susan G. Komen Breast Cancer Foundation—including his hosting several fundraisers through his businesses after losing his aunt to the disease.

Jefferson's cousin and business partner, Sade Long, testified that she attempted to contact Jefferson's trial counsel numerous times, but counsel wanted to discuss only financial matters when she reached him. Long testified that she gave her contact information to

members of counsel's office and specifically called to discuss the details of the case multiple times; yet no one ever raised the prospect that she could testify on her cousin's behalf. She would have testified at sentencing that Jefferson's businesses employ several people. Jolanda Young testified that she did not speak to trial counsel until mere minutes before Jefferson's trial. Finally, Jefferson testified that he never formally met with trial counsel before trial, that they never discussed his case, and that he is a hardworking entrepreneur who provides for his entire family.

Our supreme court recently restated that "a sentence less than the maximum sentence for an offense cannot show prejudice from the sentence itself." *State v. Thompson*, 2017 Ark. 50, at 9, 510 S.W.3d 775, 780, *petition for cert. filed*, (U.S. May 26, 2017) (No. 16-1414) (citing *State v. Smith*, 368 Ark. 620, 249 S.W.3d 119 (2007); *State v. Franklin*, 351 Ark. 131, 89 S.W.3d 865 (2002)). The *Thompson* court wrote:

> *As appellee was sentenced to less than the maximum on all charges, there must be something more than the sentence received in order for him to demonstrate prejudice. However, appellee has directed us to nothing else to indicate that he was prejudiced.* Appellee contended in his petition and at the hearing that additional penalty-phase witnesses were necessary to humanize appellee and demonstrate, essentially, that he is a good guy who had made mistakes. Obviously, the jury felt some compassion for appellee, as it recommended sentences that were far below the maximum that could have been imposed.

2017 Ark. 50, at 9, 510 S.W.3d at 780–81 (emphasis added).

Here, Jefferson does not dispute that he faced a maximum sentence of 30 years for residential burglary but was sentenced to 5 years, faced 20 years for domestic battering but was sentenced to 10 years, and faced a 10-year enhancement for committing domestic battering in the presence of a child but received only 3 years. Moreover, as in *Thompson*, the jury's compassion is reflected in its recommendation for sentences far below the

SLIP OPINION

maximums that could have been imposed. Also like Thompson, he has directed us to nothing else to indicate that prejudice occurred. Thus, Jefferson can demonstrate no prejudice due to trial counsel's alleged failure to investigate mitigating evidence or to present such evidence at the sentencing phase. Because he cannot demonstrate the *Strickland* prong of prejudice, we hold that the circuit court did not err in denying his motion for new trial.

III. *Admission of Testimony under Excited-Utterance Exception to the Hearsay Rule*

Over Jefferson's hearsay objection, the circuit court allowed Officer Schmidt to testify about statements in which Jolanda identified Jefferson as the suspect. Jefferson contends in his third point that the court clearly erred by permitting Schmidt to testify under the excited-utterance exception to hearsay and that this error was prejudicial. Matters pertaining to the admissibility of evidence are left to the sound discretion of the circuit court, and we will not reverse absent an abuse of discretion. *Bates v. State*, 2017 Ark. App. 123, at 6, 516 S.W.3d 275, 279. Here, we find no abuse of discretion.

Hearsay is generally inadmissible under Arkansas Rule of Evidence 802. Among the exceptions to the hearsay rule is "Excited Utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement." Ark. R. Evid. 803(2) (2016). For the exception to apply, there must be an event that excites the declarant. *Peterson v. State*, 349 Ark. 195, 199, 76 S.W.3d 845, 847 (2002). In addition, "it must appear that the declarant's condition at the time was such that the statement was spontaneous, excited or impulsive rather than the product of reflection and deliberation." *Fudge v. State*, 341 Ark. 759, 768, 20 S.W.3d 315, 320 (2000). Factors to be considered when determining if a statement falls under the excited-utterance exception are lapse of

time, age of the declarant, physical and mental condition of the declarant, characteristics of the event, and subject matter of the statement. *Dillard v. State*, 2013 Ark. App. 87, at 5.

Admissibility is not to be measured by a precise number of minutes, hours, or days, but "requires that the declarant is still under the stress and excitement caused by the event." *Bates v. State*, 2017 Ark. App. 123, at 7, 516 S.W.3d 275, 279. Whether a declarant makes statements in response to questions is not dispositive of whether they are the product of the exciting event. *Id.* The relevant inquiry is whether the statement was made under the stress of excitement or after the declarant calmed down and had an opportunity to reflect. *Id.* The basis for the excited-utterance exception is that a person still under the stress of the excitement or startling event will not make fabricated statements, and that the utterances are therefore trustworthy. *Dillard*, 2013 Ark. App. 87, at 6.

Jefferson discusses factors to be considered in determining whether a statement falls under the excited-utterance exception to the hearsay rule. First, it is not disputed that Jolanda is an adult woman rather than a child. Next, Jefferson argues that the State introduced no evidence of her physical or mental condition at the time of the statement; that there was a substantial lapse of time after the event—time in which police photographed the scene, Jolanda, and her children—until she made her statement; and that her statement was a response to questioning by law enforcement rather than something she simply blurted out. He contends that the admission of the statement prejudiced him by marginalizing Jolanda's in-court testimony that he did nothing wrong and obliterating the credibility of her trial testimony. He asserts that because her excited-utterance statement was admitted,

the jury disregarded her trial testimony that he had permission to enter the apartment and to discipline their son.  Thus, he concludes that the statement was fatal to his defense.

We agree with the State that the evidence does not support Jefferson's contentions that a substantial amount of time had elapsed between the event and the statement, with police already photographing the scene when Jolanda made her statement.  Officer Schmidt testified that he responded within four minutes of receiving the 911 call.  He testified that when he entered the apartment, SY was crying and distraught at the front of the apartment, and Jolanda was caring for TY in the back.  Schmidt identified State's exhibits 7 through 10 as photographs that reflected what he had observed in the apartment, including detailed photographs of lash marks and welts on TY's body.  He testified that Jolanda had pulled TY close and was squatted down on his level, holding him.  Schmidt testified, "Obviously, he was distraught.  He was crying.  She identified—"

At this point in the testimony, Jefferson objected to Jolanda's identification of him as hearsay testimony.  The circuit court ruled that the statement was admissible as an excited utterance "between the time [Schmidt] got the call and he arrived and this is what he found."  Schmidt then testified that Jolanda "indicated that Trenton Jefferson, the child's father, did this."  On cross-examination, Schmidt said that he was not the person who had taken the pictures in the apartment but that they depicted what he had seen there.

We agree with the State that a complete reading of Schmidt's testimony shows that Jolanda was still comforting TY when she identified to Schmidt, the responding officer, the person who had caused TY's injuries.  Ellis testified that he had called 911 while the beating continued, and Schmidt testified that he arrived at the apartment four minutes after receiving



the 911 call.   In light of this evidence, we find no abuse of discretion in the circuit court's

decision to admit Jolanda's statement as an excited utterance.

IV.  *Closing Argument*

Finally, Jefferson contends that the circuit court erred in restricting his attempts "to

explain the black perspective to white jurors" during closing argument.   Jefferson's counsel

told the jury that before becoming a lawyer, he had read Johnny Cochran's book—in which

Cochran said that he often "spent more time explaining the black perspective to white jurors

so they would understand."   Counsel's argument continued,

> So I'm not trying to offend you at all. He gave one classic example. He says
> that he would have to explain that if black males were hanging out on the corner
> that they weren't doing anything criminal. He said he would always have to base it
> on the fact that if there was unemployment in the white community, say a five
> percent, in the black community it's thirty percent. Now these are his numbers.  I'm
> not saying they're statistically accurate. But I'm saying that it is more in the
> community.
>
> Then he says there are situations that are setup that may make it to where a
> white person who has a felony or something like that is more likely to get a job than
> a black person with a degree so there was a lot of unemployment. Well, if your wife
> or girlfriend is working and you as a male are not working---

The State objected that this argument was not based on testimony and was simply

personalization by counsel, which was inappropriate for closing argument.    Counsel

responded,

> I'm just giving an example of the difference in experiences so this jury can understand
> that there may be a difference in the way things are viewed and what went on may
> be reasonable and appropriate related to the what he did versus what they think is
> reasonable and appropriate.

The circuit court ruled, "I think we've gone far enough with this line of argument.  . . .

I'd appreciate it if you'd move to something—thank you."

On appeal, Jefferson argues that the circuit court manifestly abused its discretion in restricting his fundamental right to present a defense by ruling that he could not discuss during the closing argument the differences of experience between the white and black communities.[3] He contends that throughout trial, the defense "focused on differences in how black and white people discipline misbehaving children."

The circuit court is given broad discretion to control counsel in closing arguments, and the appellate court does not interfere with that discretion absent a manifest abuse of discretion. *Smith v. State*, 352 Ark. 92, 108, 98 S.W.3d 433, 443 (2003).[4] Although Jefferson's defense may have focused on cultural differences in how parents discipline their children, the real issue before the jury was whether the State had proved the statutory elements of domestic battering and whether Jefferson's conduct in administering the punishment was reasonable corporal punishment. The statute makes no allowance for differences between any races in parental administration of discipline to misbehaving children. We hold that Jefferson's defense, that the whipping he administered was

---

[3]The State contends that under *Holt v. State*, 2011 Ark. 391, at 15, 384 S.W.3d 498, 508, this argument is not preserved for review. Holt's argument that he suffered prejudice from the prosecutor's closing remarks was not preserved for review because he failed to object to the prosecution's closing argument at trial. Here, however, the State's objection to Jefferson's closing remarks was sustained.

[4]In *Smith*, appellant asserted that the circuit court erred in sustaining the State's objection to his closing argument regarding the matter of consecutive sentences, —"he's got to do twenty-one years of each one of those sentences before he starts the next." The *Smith* court noted that this was not a correct statement of the law and that counsel did not offer to restate the argument to represent an accurate statement of the law. Because defense counsel's argument to the jury was not a correct statement of the law, the trial court did not err in sustaining the State's objection. *Id.*

reasonable and justified, was not compromised by the circuit court's directive to move to something else.

Affirmed.

WHITEAKER, J., agrees.

**WAYMOND M. BROWN, Judge, concurring**.  I agree with the majority that this case should be affirmed.   However, I write separately to express my concern about the majority reaching Jefferson's new-trial argument when that issue is not properly before us. In Jefferson's notice of appeal, filed on August 26, 2016, Jefferson stated that he was appealing the order entered on July 5, 2016.  He then went on to give a chronological history of this case but failed to state that he was also appealing the court's denial of his motion for a new trial.  Our case law dictates that a notice of appeal must identify the orders appealed from, and orders not mentioned in a notice of appeal are not properly before us.[5] Since Jefferson failed to include the denial of his motion for new trial in his notice of appeal, this court should not have addressed any issues related to that denial.

BROWN, J., concurs.

*James Law Firm*, by: *Michael Kiel Kaiser* and *William O. "Bill" James, Jr.*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Valerie Glover Fortner*, Ass't Att'y Gen., for appellee.

---

[5]*Ramsey v. State*, 2010 Ark. App. 601.